**SPRINT SPECTRUM L.P., Plaintiff,**

v.

**AT & T CORPORATION, Defendant.**

**No. 00–0973–CV–W–5.**

United States District Court,
W.D. Missouri,
Western Division.

July 24, 2001.

## ORDER

LAUGHREY, District Judge.

Pending before the Court is Defendant AT & T Corporation's ("AT & T") Motion for Referral of Issues to the FCC Under the Doctrine of Primary Jurisdiction and for Dismissal or a Stay Proceedings Pending the Referral [Doc. 31]. For the reasons discussed below, AT & T's motion will be granted. Portions of this case will be referred to the FCC for further proceedings and the Court will stay all remaining proceedings in this matter.

### I. *Factual Background*

Sprint Spectrum, L.P. ("Sprint") is a provider of wireless communication services throughout the country. AT & T is a provider of wireline long distance services to residential and business customers throughout the country. Sprint has filed the instant lawsuit against AT & T seeking collection of money Sprint claims is owed by AT & T. Sprint's Petition, originally filed in state court and later removed to this Court, contains three state law claims: breach of contract, quantum meruit, and action on account. Its claims all stem from AT & T's failure to pay Sprint for its alleged use of Sprint's wireless communications network.

Sprint operates a wireless communications network under the trade name "Sprint PCS." As noted above, AT & T provides interstate and intrastate telephone long distance services. In providing such services, AT & T depends upon local carriers, including wireless carriers such as Sprint PCS, to connect end-user customers with AT & T's long distance network. In particular, Sprint claims that AT & T uses the Sprint PCS network to terminate toll calls made by AT & T long distance customers to Sprint PCS customers. Sprint also asserts that AT & T uses the Sprint PCS network to originate certain calls.

Sprint states that it has repeatedly informed AT & T of its expectation that it be compensated by AT & T for AT & T's continued use of the Sprint PCS network. Sprint alleges that it has sent and continues to send AT & T monthly statements itemizing the access charges that Sprint imposes to recover its costs for the services rendered.[1] AT & T, however, has

---

1. In its suggestions in opposition to AT & T's motion, Sprint states that the access rates it charges for access to the Sprint PCS network are the same rates charged by the predomi-

nate local exchange carriers in an area (for intrastate access) or by the National Exchange Carriers Association (for interstate access).

refused to pay Sprint these access charges. Sprint claims that as of July 31, 2000, AT & T owed Sprint more than $11.8 million.

In response to Sprint's claims, AT & T has filed three counterclaims. It alleges that Sprint's access rates are unreasonable, and thus in violation of Section 201 of the Communications Act. AT & T further alleges that Sprint's assessment of access charges to AT & T is an unreasonable practice, also in violation of Section 201 of the Communications Act. Finally, AT & T alleges that Sprint unlawfully uses or attempts to use revenues from access services to subsidize the costs of providing its wireless services, a cross-subsidy in violation of Section 25(k) of the Communications Act.

## II. *Discussion*

### A. Introduction

AT & T asserts in its Motion for Referral of Issues to the FCC that the critical issues presented in this case are (1) whether a wireless carrier should be permitted to charge a long-distance carrier for terminating calls from (or delivering calls to) the long-distance carrier, and (2) if so, at what rate. Such issues, it argues, should be referred to the Federal Communications Commission ("FCC") for further consideration. Moreover, during the pendency of such referral, AT & T asserts that the instant suit must be stayed or dismissed. Sprint, in contrast, argues that referral to the FCC is unnecessary because Sprint's claims are based only on state-law theories well within the Court's experience.

██ AT & T's position is based upon the doctrine of primary jurisdiction. "Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecommunications v. Southwestern Bell Telephone Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (citing *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir.1988)). "The doctrine allows a district court to refer a matter to the appropriate administrative agency for ruling ·in the first instance, even when the matter is initially cognizable by the district court." *Id.* (citing *Iowa Beef Processors, Inc. v. Illinois Cent. Gulf R.R. Co.*, 685 F.2d 255, 259 (8th Cir.1982)). "There exists no fixed formula for determining whether to apply the doctrine of primary jurisdiction." *Id.* (citing *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). Instead, courts must consider in each case "whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created." *Id.* (citing *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir.1984)). Added expense and undue delay that may result from referral to an administrative agency make courts hesitant to apply the doctrine when appropriate reasons are lacking. *See id.*

██ Ultimately, the doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Western Pac. R.R.*, 352 U.S. at 63, 77 S.Ct. 161. In furtherance of this goal, there are two primary reasons that courts apply the doctrine of primary jurisdiction. The first, and most common, "is to obtain the benefit of an agency's expertise and experience." *Access Telecommunications*, 137 F.3d at 608. "The principle is firmly established that 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.'" *Id.* (quoting *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96

L.Ed. 576 (1952)). The second reason "is to promote uniformity and consistency within the particular field of regulation." *Id.* (citing *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303–04, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976)). Thus, in considering the propriety of a primary jurisdiction referral, courts focus particularly on two questions: whether the issues raised in a case "have been placed within the special competence of an administrative body" and whether a case poses the possibility of inconsistent outcomes between courts and the agency on issues of regulatory policy. *Western Pac. R.R.,* 352 U.S. at 64, 77 S.Ct. 161.

In the instant lawsuit, AT & T contends that both rationales for application of the primary jurisdiction doctrine exist. Specifically, AT & T argues that the decision regarding whether wireless carriers may impose access charges on long-distance providers and, if so, at what rate, are ratemaking issues that fall squarely within the FCC's special expertise and that require uniform national resolution.

### B. Application of the Primary Jurisdiction Doctrine

In support of its position that this matter turns upon issues within the FCC's primary jurisdiction, AT & T initially notes that Congress has given the FCC the power to declare as unlawful any charge or practice that is unjust or unreasonable. *See* 47 U.S.C. §§ 201(b) and 332(c)(1). Further, as AT & T points out, Congress has stated that "no state or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service . . . ." 47 U.S.C. § 332(c)(3)(A). The Court notes, however, that it is not a "state or local government," so there is no indication that Congress has prohibited the Court from considering issues related to rates charged by commercial mobile radio service ("CMRS") carriers, such as Sprint PCS. While the Court

sees no statutory reason it may not consider issues regarding rates charged by entities such as Sprint, the primary jurisdiction doctrine may warrant referral by the Court to the FCC, in particular because issues of rate reasonableness are involved.

In *Access Telecommunications,* the Eighth Circuit discussed the primary jurisdiction doctrine in the context of a dispute over charges billed to a reseller of long-distance services under a filed tariff. 137 F.3d at 608–09. The court stated that challenges to the reasonableness of a tariff are "properly brought before an administrative agency." *Id.* at 608. *See also Southwestern Bell Telephone Co. v. Allnet Communications Services, Inc.,* 789 F.Supp. 302, 304 (E.D.Mo.1992) (citing *In re Long Distance Telecommunications Litigation,* 831 F.2d 627, 631 (6th Cir.1987) (further citations omitted)).

The Eighth Circuit has also previously acknowledged this principle in contexts other than the telecommunications industry. *Iowa Beef Processors* involved a dispute in the transportation industry context concerning whether carriers have an obligation to supply meathooks when transporting carcass beef via "piggyback" rail service. 685 F.2d at 257–58. The court held that whether the carrier had "assumed such a duty should be determined in the first instance by the [Interstate Commerce Commission]." *Id.* at 260. The court noted that the primary jurisdiction doctrine requires referral to an administrative agency when the claim involves "an inquiry into the lawfulness of a carrier's practice . . . or when problems of cost allocation are relevant to and intertwined with the issue of tariff construction." *Id.* at 261 (citations omitted). Further, the *Iowa Beef Processors* court stated that the question presented by the case "directly implicates the ratemaking process, and, therefore, application of the

doctrine of primary jurisdiction requires reference to the ICC." *Id.*

Courts in other jurisdictions have also held that where issues of rate reasonableness are involved, referral to an administrative agency is appropriate. For example, the recent case of *Advamtel, LLC v. AT & T Corp.*, 105 F.Supp.2d 507 (E.D.Va. 2000), presented analogous issues to those involved in the instant lawsuit. In that case, sixteen competitive local exchange carriers ("CLECs") brought a collection action against AT & T.[2] Similar to the instant suit, the dispute arose from the CLECs "unsuccessful efforts to collect fees allegedly owed to them by AT & T for use of [the CLECs] local exchange networks in routing long distance telephone calls." *Id.* at 509. In response to the lawsuit, AT & T filed a counterclaim in which it stated six claims, including claims for unreasonable practices, unreasonable rates, and illegal use of cross-subsidies, all counterclaims that AT & T has also raised in this lawsuit. After discussing the general principles behind the doctrine of primary jurisdiction, the court in *Advamtel* stated:

> One issue typically referred to the FCC under the primary jurisdiction doctrine is the reasonableness of a carrier's tariff because that question requires the technical and policy expertise of the agency, and because it is important to have a uniform national standard concerning the reasonableness of a carrier's tariff, as a tariff can affect the entire telecommunications industry.

*Id.* at 511 (citing *MCI Telecommunications Corp. v. Ameri–Tel, Inc.*, 852 F.Supp. 659, 665 (N.D.Ill.1994)). The court in *Advamtel* therefore held that AT & T's claims of unreasonable rates and illegal cross-subsidies should be referred to the FCC.

*Id.* Further, in a subsequent order, the court referred additional issues and ordered that the remaining issues in the case be stayed for a period of time. [See Exh. A to AT & T's Reply Sugg.].

In response to AT & T's suggestion that this case involves issues within the special expertise of the FCC, Sprint argues that its state law claims do not involve the Communications Act or require referral to the FCC. Sprint notes that there are no tariffs to interpret or regulated rates to approve. It characterizes its claims as nothing more than a collection action in which it seeks to recover money owed for services rendered under state law theories well within the Court's experience.

Sprint's lawsuit does not involve an existing tariff. If this were nothing more than an action to enforce such a tariff, the Court would agree that there would be no need to refer such an issue to the FCC. *See Access Telecommunications*, 137 F.3d at 608 (citation omitted). As Sprint acknowledges, however, it is not asking the Court to simply enforce an existing written agreement. There is no tariff that has been filed which serves as the basis for Sprint's allegation that AT & T owes it upwards of $11.8 million. Instead, Sprint seeks recovery based on the theory of quantum meruit and an implied contract. Given these facts, the Court would agree that it would perhaps be within its province to pass upon the question of whether such an implied contract exists, but the Court fails to see how Sprint may ultimately obtain any relief in this matter without a determination as to the reasonableness of the rates for Sprint's services that AT & T has utilized. In Sprint's own claim for "action on account" Sprint alleges that its rates are "reasonable." This is

---

**2.** Sprint Communications Company was also originally included as a defendant. The claims against it and AT & T, however, were severed by the court. *See Advamtel*, 105 F.Supp.2d at 508 n. 2.

clearly a fact that must be proven and one which the FCC is in a better position than the Court to evaluate. Likewise, the FCC is in a better position to evaluate whether Sprint may properly charge for the services which it has provided to AT & T.

Referral to the FCC is especially appropriate in this case for the additional reason that only the FCC can ensure a uniform national resolution of the issues presented. As noted above, in addition to the need for agency expertise, the need for uniformity and consistency within a particular field is a basis for application of the primary jurisdiction doctrine. *See DeBruce Grain, Inc. v. Union Pacific R.R. Co.*, 149 F.3d 787, 789 (8th Cir.1998) (citing *Far East Conference*, 342 U.S. at 574, 72 S.Ct. 492); *see also Access Telecommunications*, 137 F.3d at 608 (citing *Allegheny Airlines*, 426 U.S. at 303–04, 96 S.Ct. 1978). The Court believes that the need for uniformity in regulation of wireless carriers' access fees is important, for if the question is left to courts in the first instance, the possible result is a patchwork of regulations that may ultimately lead to competitive advantage for certain wireless carriers. Moreover, this case presents policy questions that require uniform resolution if possible. In particular, the question presented by Sprint's claims as to whether Sprint may even charge AT & T for access to the Sprint PCS network raises an economic policy question regarding who should ultimately compensate carriers like Sprint PCS for such access—interexchange carriers such as AT & T or Sprint's own end-users. The FCC is clearly better able to consider the economic ramifications raised by this issue and to impose a uniform result.

Sprint, however, argues that the claims involved here do not present any issues

that the FCC has not already addressed. Specifically, Sprint asserts that the FCC has already determined that CMRS carriers, like Sprint PCS, provide access services and that free market forces will determine the price of such services. Therefore, Sprint suggests that the FCC has already decided that it will not regulate the access charges imposed by Sprint PCS. The Court disagrees.

As AT & T points out, Sprint's first assertion, that CMRS carriers provide access services, is irrelevant in this matter. Indeed, the parties do not dispute this fact and whether companies such as Sprint provide such services does not bear on the question of how much may be charged for such services. Sprint's second point, that the FCC has decided not to regulate the charges involved in this case, is based upon unconvincing authority.

In support of its position, Sprint quotes a paragraph from an FCC order stating that the FCC will *"temporarily* forebear from requiring or permitting CMRS providers to file tariffs for interstate access service." *In the Matter of Implementation of Sections 3(N) and 332 of the Communications Act Regulatory Treatment of Mobile Services,* Second Report and Order, 9 F.C.C.R. 1411, ¶ 179 (March 7, 1994) (emphasis added).[3] This order, issued over seven years ago, states a tentative conclusion at best. In a much more recent pronouncement, the FCC has requested comments on a proposed change to inter-carrier compensation structures, stating that it is "particularly interested in identifying a unified approach to intercarrier compensation—one that would apply to interconnection arrangements between all types of carriers interconnecting with the local telephone network, and to all types of

---

**3.** Sprint also cites *In re Wireless Consumers Alliance, Inc.,* 15 F.C.C.R. 17,021 (Aug. 14, 2000). As AT & T points out, however,

Sprint's citation is misplaced, as the FCC order in that case deals with end-user charges and not access charges.

traffic passing over the local telephone network." *In the Matter of Developing a Unified Intercarrier Compensation Regime,* Notice of Proposed Rulemaking, CC Dkt. No. 01–92, FCC 01–132, ¶ 2 (April 27, 2001); [Exh. D to AT & T's Reply Sugg.].[4] Further, in an order issued the same day relating to access rates in the analogous CLEC context, the FCC stated that CLECs would be allowed to file tariffs on their access rates. *See In the Matter of Access Charge Reform,* Seventh Report and Order and Further Notice of Proposed Rulemaking, CC Dkt. No. 96–262, FCC 01–146, ¶ 51 (April 27, 2001); [Exh. C to AT & T's Reply Sugg.]. The FCC also noted that it was giving "serious consideration" to moving toward a "bill and keep" approach for intercarrier compensation, the position adopted by AT & T in its dealings with Sprint PCS.[5] *See id.* at ¶ 53. Thus, the Court believes that regulation of access charges by CMRS carriers is far from settled from the FCC's perspective at this time. Moreover, Sprint does not point to any affirmative statement suggesting that the FCC has taken a firm position against regulating such charges.

■ In sum, the Court concludes that referral to the FCC is appropriate in this matter. The crux of the dispute in this case involves whether Sprint may charge AT & T access fees for use of the Sprint PCS network and, if so, what rate may reasonably be charged for such services. Based on the foregoing discussion, these issues should be referred to the FCC for determination under the doctrine of primary jurisdiction, as they involve matters within the agency's special expertise and which require a uniform national resolution.

■ Referral of the above-mentioned issues to the FCC raises a final question regarding whether this case should be stayed or dismissed. Sprint argues that dismissal would be unfairly prejudicial and that a stay would be more appropriate. Sprint points out that the FCC is statutorily obligated to investigate complaints and issue an order within five months of filing. *See* 47 U.S.C. §§ 208(a) and (b)(1). Sprint suggests, however, that this is more often the exception than the rule and therefore that a five month stay should be entered to avoid its claims getting "lost" at the FCC. AT & T asserts, in contrast, that a dismissal is appropriate because the FCC is likely to resolve the dispositive issues in this case. Further, AT & T states that if a stay is entered, five months is likely to be an inadequate time period for the FCC to resolve the issues.

---

4. Sprint acknowledges the FCC's recently issued Notice of Proposed Rulemaking ("NPRM"). Sprint asserts, without citation to any authority, that the NPRM is not a reason for referral of the issues in this lawsuit because the FCC will at most consider changing access rate structures in the future. As AT & T notes, however, if the FCC resolves this case through adjudication, such a decision could apply retroactively. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 224, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (Scalia, J., concurring) (citations omitted). Further, if the FCC proceeds through rulemaking, any result would be "persuasive, if not conclusive, as to questions concerning past events." *Advamtel, LLC v. Sprint Communications Co., L.P.,* 125 F.Supp.2d 800, 806 (E.D.Va.2001). *See also MCI Telecomm. Corp. v. FCC,* 10 F.3d 842, 846–47 (D.C.Cir. 1993) (prospective rulemaking "does not mean that … [if] the Commission has found conduct unlawful it has thereby found that the identical conduct was lawful in the past").

5. Under the "bill and keep" approach, a terminating wireless or wireline carrier does not bill a long distance carrier for terminating a call, but instead recovers its costs exclusively from its own end-users. *See* Patrick DeGraba, Bill and Keep at the Central Office as the Efficient Interconnection Regime, OPP Working Paper No. 33 (Dec.2000) (on file with the Office of Plans and Policy, Federal Communications Commission); [Exh. B to AT & T's Sugg. in Support].

When issues are referred to an administrative agency under the doctrine of primary jurisdiction, the Court may stay the case to give the parties a "reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Alternatively, in its discretion, "if the parties [will] not be unfairly disadvantaged," the Court may dismiss the case without prejudice. *Id.* at 268–69, 113 S.Ct. 1213. In this case, the Court will exercise its discretion to stay the case for ten months in order to allow the parties to seek resolution of the issues before the FCC. This will allow the FCC twice as much time as allotted by statute to resolve the issues and give an incentive to AT & T to move expeditiously. If the FCC is unable or unwilling to resolve the issues presented by this case within that time, then the Court will proceed with the instant litigation.

### III. *Conclusion*

Accordingly, it is hereby

ORDERED that Defendant AT & T Corporation's Motion for Referral of Issues to the FCC Under the Doctrine of Primary Jurisdiction and for Dismissal or a Stay Proceedings Pending the Referral [Doc. 31] is GRANTED. The questions of whether Sprint may charge access fees to AT & T for access to the Sprint PCS wireless network and, if so, the reasonableness of Sprint's charges for such services are referred to the FCC for further consideration. It is further

ORDERED that Defendant AT & T Corporation is directed to prepare and submit the appropriate filings to bring these issues before the FCC by Friday, August 24, 2001. It is further

ORDERED that this case is STAYED until June 24, 2002. If, by that time, the FCC has not ruled on the referred issues, this Court will proceed with the instant litigation. It is further

ORDERED that the parties are directed to file a joint report on the status of the FCC proceedings six (6) months from the date of this Order.