Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued October 23, 2003    Decided November 25, 2003

No. 02-1221

AT&T CORPORATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

QWEST COMMUNICATIONS INTERNATIONAL INC., ET AL.,
INTERVENORS

---

Consolidated with
Nos. 02-1240, 02-1263, 02-1275

---

On Petitions for Review of an Order of the
Federal Communications Commission

---

*David W. Carpenter* argued the cause for IXC and LEC petitioner-intervenors. With him on the briefs were *Peter H.*

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Jacoby, Judy Sello, Daniel Meron, Jonathan F. Cohn, Robert B. McKenna, William Single IV*, and *Jeffrey A. Rackow*.

*Andrew G. McBride* argued the cause for petitioners Sprint Spectrum L.P. and Cellco Partnership. With him on the briefs were *John T. Scott III, Luisa L. Lancetti*, and *R. Michael Senkowski*. *Kenneth D. Patrich* and *Lewis A. Tollin* entered appearances.

*John E. Ingle*, Deputy Associate General Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *R. Hewitt Pate*, Acting Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, and *Richard K. Welch* and *Laurel R. Bergold*, Counsel.

*Luisa L. Lancetti, Caressa D. Bennet* and *Gregory W. Whiteaker* were on the brief for intervenors Sprint Spectrum L.P. and Rural Telecommunications Group. *Kenneth D. Patrich* entered an appearance.

*Peter H. Jacoby, Judy Sello, David W. Carpenter, Daniel Meron, Robert B. McKenna, William Single IV,* and *Jeffrey A. Rackow* were on the brief for IXC and LEC intervenors in Case Nos. 02-1263 and 02-1275. *Jonathan F. Cohn* and *Mark C. Rosenblum* entered appearances.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: AT&T Corporation ("AT&T") and Sprint Spectrum L.P. ("Sprint PCS" or "Sprint"), along with Cellco Partnership, petition this court for review of a declaratory ruling of the Federal Communications Commission ("FCC" or "Commission") responding to a primary jurisdiction referral from the United States District Court for the Western District of Missouri. The referral arose during the course of litigation between AT&T and Sprint in Missouri in

which Sprint sought compensation from AT&T for its use of Sprint's wireless network. AT&T removed the case from state court to the federal district court, which then referred specific questions to the FCC under the doctrine of primary jurisdiction. In its referral order, the district court inquired of the FCC (1) whether Sprint may charge access fees to AT&T for access to the Sprint PCS wireless network and, if so, (2) the reasonableness of Sprint's charges.

After receiving petitions for declaratory rulings from both AT&T and Sprint, along with public comments, the Commission held that Sprint is entitled to collect access charges from AT&T only to the extent that a contract between the parties imposes a payment obligation on AT&T. The FCC declined to determine the reasonableness of any rate until after the district court determined whether the parties are bound by a contract. Both AT&T and Sprint raise numerous challenges to the Commission's ruling, none of which are properly before this court for review. Accordingly, we dismiss the petitions for review.

## I. BACKGROUND

The facts underlying this case are largely undisputed. Because this information is adequately set forth in the Commission's ruling that is the subject of review here, *see In the Matter of Petitions of Sprint PCS and AT&T Corp. for Declaratory Ruling Regarding CMRS Access Charges*, 17 F.C.C.R. 13,192, at 13,193-95 (2002), *reported at* 67 Fed. Reg. 49,242 (F.C.C. 2002) (hereinafter *"Declaratory Ruling"*), we will simply summarize the most important facts to highlight what is at issue.

In 1998, petitioner Sprint PCS, a commercial mobile telephone service ("CMRS") provider, started billing AT&T for the costs of terminating interexchange traffic bound for its customers. AT&T refused to pay the Sprint invoices. *Declaratory Ruling*, 17 F.C.C.R. at 13,193. On August 8, 2000, Sprint sought to enforce payment by filing suit in state court in Missouri seeking a monetary judgment against AT&T on three causes of action: breach of contract, *quantum meruit*,

and action on account. *Id.* AT&T then removed the case to federal district court in the Western District of Missouri. Sprint moved to remand the case back to state court, which AT&T opposed. Sprint denied the existence of diversity between the parties and claimed that its state-law claims in no way raised any federal question. Plaintiff's Motion to Remand at 1-2, *Sprint Spectrum L.P. v. AT&T Communications, Inc.*, No. 00-0973-CV-W-5 (W.D. Mo. 2001), Joint Appendix ("J.A.") 61-62. In its opposition, AT&T argued, *inter alia*, that Sprint's state-law claims were wholly preempted by 47 U.S.C. § 332, because they would require the court to establish a rate for terminating access. Defendant's Suggestions in Opposition to Plaintiff's Motion to Remand at 4-11, *Sprint Spectrum L.P. v. AT&T Communications, Inc.*, No. 00-0973-CV-W-5 (W.D. Mo. 2001), J.A. 95-102.

The district court denied Sprint's motion to remand, holding that it had jurisdiction based upon the diversity of the parties without addressing whether or not Sprint's action raised federal claims. *Sprint Spectrum L.P. v. AT&T Communications, Inc.*, No. 00-0973-CV-W-5 (W.D. Mo. Feb. 8, 2001) (order denying Sprint's motion to remand), *reprinted in* J.A. 169. AT&T then asked the district court to refer the case to the Commission under the doctrine of primary jurisdiction. *See Sprint Spectrum L.P. v. AT&T Corp.*, 168 F. Supp. 2d 1095, 1096 (W.D. Mo. 2001). Sprint opposed that motion, arguing that it was simply seeking payment for services rendered using state-law theories that do not involve the Communications Act or the FCC's special expertise. *Id.* at 1099.

On July 24, 2001, the district court referred two issues to the Commission under the doctrine of primary jurisdiction. *Id.* at 1096. The court was very precise in setting forth the terms of its referral:

> ORDERED that Defendant AT&T Corporation's Motion for Referral of Issues to the FCC Under the Doctrine of Primary Jurisdiction and for Dismissal or a Stay Proceedings Pending the Referral is GRANTED. The questions of whether Sprint may

charge access fees to AT&T for access to the Sprint PCS wireless network and, if so, the reasonableness of Sprint's charges for such services are referred to the FCC for further consideration. It is further

ORDERED that Defendant AT&T Corporation is directed to prepare and submit the appropriate filings to bring these issues before the FCC by Friday, August 24, 2001.

*Id*. at 1102.

On October 22, 2001, AT&T and Sprint filed separate petitions seeking declaratory rulings from the FCC. The Commission described these filings, as follows:

In its petition, Sprint PCS asks the Commission to find that there is no federal law or Commission policy that bars Sprint PCS from recovering its call termination costs from AT&T. Sprint PCS also asks [the Commission] to find that AT&T's refusal to pay access charges to Sprint PCS is unreasonably discriminatory under section 202(a) of the Communications Act of 1934, as amended (the Act), and unjust and unreasonable under section 201(b) of the Act. In its petition, AT&T asks the Commission to find that CMRS carriers should continue to recover their costs from their end users, not by imposing access charges on IXCs. If CMRS carriers are permitted to impose access charges, AT&T asks that those charges be capped at the reciprocal compensation rate for local traffic and assessed only prospectively.

*Declaratory Ruling*, 17 F.C.C.R. at 13,193-94.

Because the parties' petitions for declaratory rulings were much wider in scope than the district court's referral order, the FCC's *Declaratory Ruling* is somewhat free-wheeling in its discourse. As a consequence, there are numerous observations in the *Declaratory Ruling* that do not purport to respond to the district court's referral order or to otherwise pass judgment on any issue. Cut to its core, however, the

FCC *Declaratory Ruling* is fairly precise in responding to the referral order. The principal terms of the *Declaratory Ruling* are as follows:

> 7. Sprint PCS is correct that neither the Communications Act nor any Commission rule prohibits a CMRS carrier from attempting to collect access charges from an interexchange carrier.

*Id.* at 13,195.

> 8. That Sprint PCS may seek to collect access charges from AT&T does not, however, resolve the question whether Sprint PCS may unilaterally impose such charges on AT&T.

*Id.* at 13,196.

> 9. We find that there is no Commission rule that enables Sprint PCS unilaterally to impose access charges on AT&T.

*Id.* at 13,196.

> 12. There being no authority under the Commission's rules or a tariff for Sprint PCS unilaterally to impose access charges on AT&T, Sprint PCS is entitled to collect access charges in this case only to the extent that a contract imposes a payment obligation on AT&T. While it is preferable for carriers to memorialize such contracts in a written agreement, the parties here agree that there is no written agreement or any express contract between AT&T and Sprint PCS. Nevertheless, the law recognizes – as has the Commission – that an agreement may exist even absent an express contract.

> 13. Turning to the question whether there was such an agreement here, we believe that it is an issue that should be resolved by the Court. We interpret the Court's primary jurisdiction referral as seeking our input on the federal communications law questions related to this dispute. Because the existence of a contract is a matter to be decided under

state law, we defer to the court to answer this question.[40]

___

[40] Sprint PCS also has advanced a *quantum meruit* argument under Missouri law in the pending litigation. *Quantum meruit* is premised on the notion that a party receiving service would be unjustly enriched if it were not required to pay for that service. Although we defer to the court to address this state law claim, we note that an award of *quantum meruit* would require the court to establish a value (i.e., set a rate) for the service provided in the past. We note that there is a substantial question whether a court may award *quantum meruit* or other equitable relief under state law without running afoul of section 332(c)(3)(A). 47 U.S.C. § 332(c)(3)(A); *see, e.g.*, *Bastien v. AT&T Wireless*, 205 F.3d 983, 986 (7th Cir. 2000) ("If Bastien's complaint in fact raises regulatory issues preempted by Congress, then the claims would fail as a matter of law since they are couched in terms of two state law actions."); *Gilmore v. Southwestern Bell Mobile Services*, 156 F. Supp. 2d 916, 925 (N.D. Ill. 2001) (state law claim based on unjust enrichment preempted under section 332(c)(3)(A)).

*Id*. at 13,198.

Paragraph 18 of the *Declaratory Ruling* rejects Sprint's claims under §§ 201(b) and 202(a) as premature:

> 18. We need not address Sprint PCS's claims under sections 201(b) and 202(a) at this time. Until the court determines the respective obligations of the parties, in particular whether AT&T has any obligation to pay Sprint PCS under a contract, the Commission has no basis on which to assess whether AT&T is subject to sections 201(b) or 202(a) in these circumstances and, if so, whether its actions violate those statutory provisions.

*Id*. at 13,200. The Commission also declined to entertain issues relating "either to the prospective treatment of CMRS-IXC interconnection or to issues beyond the scope of those presented for Commission resolution in the primary jurisdic-

tion referral." *Id.* Rather, the Commission firmly stated that the *Declaratory Ruling* merely "clarifies requirements under [the FCC's] *existing* rules." *Id.*

In its petition for review, AT&T argues that the *Declaratory Ruling* is contrary to law, because, in allegedly allowing a state court to determine whether it owes access charges under an implied contract or *quantum meruit*, the Commission departed from its precedent holding that states are preempted by 47 U.S.C. § 332(c)(3)(A) from setting rates for intercarrier compensation. Sprint contends, in its petition, that the *Declaratory Ruling* is arbitrary and capricious in not requiring AT&T to pay access charges. Sprint also argues that the FCC favored one set of providers and one type of communication technology over another in violation of the Communications Act. And, finally, Sprint challenges observations in the *Declaratory Ruling* that appear adverse to Sprint's interests but which have no binding legal effect. We deny both petitions, because neither AT&T's nor Sprint's claims are ripe for consideration by this court.

## II. ANALYSIS

### A. Standard of Review

In order to succeed in their challenges, AT&T and Sprint must demonstrate that the *Declaratory Ruling* is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A) (1996).

> Highly deferential, [the arbitrary and capricious] standard presumes the validity of agency action, requiring us to determine whether the agency has considered the relevant factors and "articulate[d] a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (internal quotation marks omitted). We "may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a

> clear error in judgment." *Kisser v. Cisneros*, 14 F.3d 615, 619 (D.C. Cir. 1994).

*AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000).

The court reviews Commission constructions of the Communications Act in accordance with *Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and its progeny. Under *Chevron*, "[i]f the intent of Congress is clear," the court "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. If "Congress has not directly addressed the precise question at issue," the agency's statutory interpretation is entitled to deference, as long as it is reasonable. *Id*. at 843-44. *Chevron* deference is due, however, only if the agency has acted pursuant to "delegated authority" and the agency action has the "force of law." *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).

In applying these standards, "[t]he job of judges is to ask whether the Commission made choices reasonably within the pale of statutory possibility." *Verizon Communications Inc. v. FCC*, 535 U.S. 467, 539 (2002).

## B. Standing

The Commission initially argues that AT&T has suffered no actual or imminent injury as a result of the *Declaratory Ruling* and, therefore, lacks standing to challenge it. We reject this argument. The *Declaratory Ruling* holds that AT&T may be obligated to Sprint pursuant to an implied-in-fact contract and it leaves the matter to the district court to determine whether a contract exists. This portion of the *Declaratory Ruling* clearly causes a cognizable injury to AT&T which would be redressed with a favorable ruling from this court.

In *AT&T Corp. v. FCC*, 317 F.3d 227, 238 (D.C. Cir. 2003), we held that AT&T had standing to challenge an FCC order determining that AT&T was liable for access charges to a local exchange carrier, even though the order did not require payment, because the order exposed AT&T to liability in

pending litigation. Similarly, AT&T has standing in this case because the *Declaratory Ruling* exposes it to liability for access charges in its pending litigation with Sprint.

## C. Ripeness

The Commission argues, in the alternative, that AT&T's section 332(c)(3)(A) preemption claim is unripe for review, because, first, the issue is presently unfit for decision by this court and, second, a delay in judgment will cause no hardship to AT&T. Likewise, the Commission argues that it reasonably deferred resolution of Sprint's section 201(b) and 202(a) claims until after the district court in Missouri decides whether AT&T has a contractual obligation to pay access charges. The FCC also contends that Sprint's remaining claims relate to matters with respect to which the agency has issued no final judgment; thus, according to the Commission, these matters surely are not subject to judicial review.

The framework for assessing ripeness was established in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967), in which the Supreme Court provided a two-pronged test that requires a reviewing court to evaluate "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." As we noted in *City of Houston v. Department of Housing & Urban Development*, 24 F.3d 1421, 1430-31 (D.C. Cir. 1994), "the 'primary focus' of the ripeness doctrine is to balance 'the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subject to review and the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting.'" *Id.* at 1430 (citing *Eagle-Picher Industries v. EPA*, 759 F.2d 905, 915 (D.C.Cir.1985)).

Under the "fitness of the issues" prong, the first question for a reviewing court is "whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review." *Better Gov't Ass'n v. Dep't State*, 780 F.2d 86, 92 (D.C. Cir. 1986); *see also Payne Enters., Inc. v. United States*, 837 F.2d 486, 492 (D.C. Cir. 1988); *Eagle-Picher*, 759 F.2d at 915. We next consider

whether the court or the agency would benefit from postponing review until the policy in question has sufficiently "crystallized" by taking on a more definite form. *See Better Gov't*, 780 F.2d at 92.

The "hardship" prong of the *Abbott Laboratories* test is not an independent requirement divorced from the consideration of the institutional interests of the court and agency. *Payne*, 837 F.2d at 493. Thus, where there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong. *See*, *e.g.*, *Consol. Rail Corp. v. United States*, 896 F.2d 574, 577 (D.C.Cir.1990). However, where there are strong interests militating in favor of postponement, we must weigh the potential hardship of delay on the appellant. *City of Houston*, 24 F.3d at 1430-31 & n.9. Under the "hardship" prong, we consider a claimant's "interest in immediate review." *Better Gov't*, 780 F.2d at 92. If "[t]he only hardship [a claimant] will endure as a result of delaying consideration of [the disputed] issue is the burden of having to [engage in] another suit," this will not suffice to overcome an agency's challenge to ripeness. *City of Houston*, 24 F.3d at 1431-32.

In applying these standards to the instant petitions for review, we agree with the Commission that the matters at hand should be dismissed as unripe.

1. AT&T's Petition

As noted above, the Commission's *Declaratory Ruling* responded to the two questions referred by the district court: whether Sprint may charge access fees to AT&T for access to the Sprint PCS wireless network and, if so, the reasonableness of Sprint's charges for such services. *See Sprint Spectrum L.P.*, 168 F. Supp. 2d at 1102. As to the first question, the Commission held that AT&T was not required to pay such charges absent a contractual obligation to do so. As to the second question, the Commission responded, "until the Court decides whether there was a contract, it is premature to address the court's second question regarding the reasonableness of any rate charged." *Declaratory Ruling*, 17 F.C.C.R. at 13,192.

AT&T's principal claim is that the FCC's *Declaratory Ruling* implicitly suggests that a state court might properly determine that Sprint is entitled to access fees on the basis of an implied-in-fact contract with no fixed price term (which would require a state court determination of the "reasonableness" of the access charges) or on the basis of *quantum meruit* (which is an equitable claim not based on a contractual commitment). AT&T argues, in particular, that, because all of Sprint's state-law claims would require the district court to set a "reasonable" price for Sprint PCS's services, those claims are expressly preempted by 47 U.S.C. § 332(c)(3)(A). Therefore, according to AT&T, the failure of the *Declaratory Ruling* to hold Sprint's state-law claims preempted is both contrary to law and arbitrary. AT&T also contends that, in failing to declare Sprint's claims preempted, the *Declaratory Ruling* is an unexplained departure from the FCC's ruling in *In the Matter of Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17,021 (2000) (also cited as "*CMRS Preemption Order*") (interpreting § 332(c)(3)(A) to preempt state courts from "determin[ing] the reasonableness of a prior rate").

The problem with AT&T's argument is that it rests on faulty premises: First, the Commission did not, as AT&T suggests, declare that the district court was free to determine the reasonableness of a prior rate. Second, the Commission did not purport to depart from its ruling in *Wireless Consumers Alliance*. And, third, the Commission did not resolve the preemption issue, either explicitly or implicitly.

The *Declaratory Ruling* says that, "[b]ecause the existence of a contract is a matter to be decided under state law, we defer to the [district] court to answer this question." *Declaratory Ruling*, 17 F.C.C.R. at 13,198. The Commission also noted that "an agreement may exist even absent an express contract." *Id.* On this latter point, the Commission suggested that AT&T could be liable to Sprint on "[a]n implied-in-fact contract," which "is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.'" *Id.* at n.38 (quoting *Hercules, Inc. v. United*

*States*, 516 U.S. 417, 424 (1996)). These determinations are neither surprising, nor are they adverse to AT&T's position.

Notably, AT&T and the Commission agree on three important points: First, state courts may not determine the reasonableness of a prior rate or set a prospective charge for service. Second, state courts may determine whether the parties have in place a contract that fixes access charges. And, third, access charges may be established by an express contract or an implied-in-fact contract in which the price was already fixed (such that the state court would not inquire into the reasonableness of the rate). AT&T does not contest these points and nothing in the *Declaratory Ruling* calls these matters into question. Rather, AT&T essentially argues that the real dispute in this case concerns whether Sprint may prevail against AT&T on state-law claims based on either an implied-in-fact contract in which the price is open or on a theory of *quantum meruit*.

AT&T does not seriously contest the Commission's treatment of the *quantum meruit* issue, for the agency left little room for confusion on this point, strongly suggesting that a claim based on *quantum meruit* would be preempted. *See Declaratory Ruling*, 17 F.C.C.R. at 13,198 n.40. Instead, AT&T's major complaint is over the failure of the *Declaratory Ruling* to hold that an open-price implied-in-fact contract is preempted. In particular, AT&T fears that the district court has already determined that Sprint may pursue an implied-in-fact claim that, under Missouri law, will require the court to determine the reasonableness of the rates for Sprint's services. *See* Petitioner AT&T's Reply Br. at 3. AT&T thus concludes that the FCC's failure to decide the preemption issue is arbitrary. We disagree.

The district court's referral order *asks* the Commission "whether Sprint may charge access fees to AT&T for access to the Sprint PCS wireless network and, if so, the reasonableness of Sprint's charges for such services." *See Sprint Spectrum L.P.*, 168 F. Supp. 2d at 1102. Plainly, the referral order does not assume the answers to the questions that are being asked. And, in answer to these questions, the *Declara-*

*tory Ruling* merely "clarifies requirements under [the FCC's] *existing* rules." *Declaratory Ruling*, 17 F.C.C.R. at 13,200. In other words, in giving guidance to the district court, the Commission merely recounted the established legal rules that were in place during the time periods covering the dispute between Sprint and AT&T. *Id.* at n.51. Therefore, AT&T's claim that the *Declaratory Ruling* is an arbitrary and capricious departure from the existing legal regime as defined by *Wireless Consumers Alliance* is simply mistaken. Indeed, during oral argument, FCC counsel acknowledged that *Wireless Consumers Alliance* accurately reflects the legal landscape that was in place during the periods for which Sprint seeks access fees from AT&T. Nothing in the *Declaratory Ruling* counters this.

*Wireless Consumers Alliance* makes it clear that a state court would "overstep its authority under Section 332 if, in determining damages, it does enter into a regulatory type of analysis that purports to determine the reasonableness of a prior rate or it sets a prospective charge for services." *Wireless Consumers Alliance*, 15 F.C.C.R. at 17,041. However, *Wireless Consumers Alliance* also holds that § 332 does not generally preempt state courts from awarding monetary damages for breach of contract. *Id.* at 17,040. Rather, the Commission stated that "whether a specific damage award or damage calculation is prohibited by Section 332 will depend on the specific details of the award and the facts and circumstances of the case," and noted that "a consideration of the price originally charged, for the purposes of determining the extent of the harm or injury involved, is not necessarily an inquiry into the reasonableness of the original price and therefore is permissible." *Id.* at 17,041.

AT&T *concedes* that if the *Declaratory Ruling* does not abrogate the teachings of *Wireless Consumers Alliance*, and if it merely defers the preemption issue to the district court, and if it does not preclude AT&T from pursuing the preemption defense in district court, then the *Declaratory Ruling* would be a simple deferral and maintenance of the status quo and AT&T would have no viable claims at this time. *See* Petitioner AT&T's Reply Br. at 2. This is a telling conces-

sion from AT&T, because the *Declaratory Ruling* has precisely the effect sought by AT&T. The *Declaratory Ruling* does not hold that the district court may avoid the preemption issue if it is raised by AT&T. In other words, if the district court were to find only an open-price implied-in-fact contract (or a claim based on *quantum meruit*) between Sprint and AT&T, the *Declaratory Ruling* in no way forecloses AT&T from raising a preemption defense. Thus, as AT&T concedes, it has no viable claims to pursue in this court at this time.

Lacking finality, the issue raised by AT&T is not fit for review. Furthermore, both the agency and the court would benefit from postponing review until the district court in Missouri determines whether there is any contract between Sprint and AT&T. Under *Wireless Consumers Alliance*, Sprint's state-law claims may well be preempted if the district court finds only an open-price, implied-in-fact contract (or a claim based on *quantum meruit*) that requires it to set a reasonable rate. The Commission reasonably declined to decide that question until it had taken on a more definite form.

Finally, where, as here, there are strong interests militating in favor of postponement, we must weigh the potential hardship of delay in assessing whether to dismiss for want of ripeness. On the record in this matter, AT&T has not demonstrated hardship to overcome the FCC's contention that the case is unripe for review. The only hardship asserted by AT&T is the "burden of fighting Sprint's claims in district court." *See* Petitioner AT&T's Reply Br. at 9-10, 12. But the burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship to overcome the agency's challenge to ripeness. *See Florida Power & Light Co. v. EPA*, 145 F.3d 1414, 1421 (D.C. Cir. 1998); *see also Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1205-06 (D.C. Cir. 1998). Since the preemption issue raised by AT&T before this court satisfies neither the fitness nor the hardship requirements for ripeness, we dismiss AT&T's claims for want of ripeness.

2. Sprint's Petition

Sprint has not alleged any hardship, so we only inquire whether the issues it raises are fit for judicial review. Sprint asks this court to vacate the observations in the *Declaratory Ruling* that "CMRS carriers have never operated under the same calling party's network pays (CPNP) compensation regime as wireline LECs," that "[u]ntil 1998 . . . all CMRS carriers recovered the cost of terminating long distance calls from their end users, and not from interexchange carriers," and that "[b]ecause both carriers charge their customers for the service they provide, it does not necessarily follow that IXCs receive a windfall in situations where no compensation is paid for access service provided by a CMRS carrier." *See* Petitioner Sprint's Br. at 28 (citing *Declaratory Ruling*, 17 F.C.C.R. at 13,198-99). Sprint claims that these historical observations are somehow preclusive, in that they may influence the district court's judgment on the contract claim or be cited by other IXCs who refuse to pay Sprint's access charges.

It is clear that the passages from the *Declaratory Ruling* cited by Sprint are merely descriptive statements by the agency, not legal conclusions. The statements have no force of law, so they cannot conclusively cause the adverse collateral consequences suggested by Sprint. In short, Sprint is quibbling over FCC observations that have no binding effect whatsoever. This is never a basis for review in this court. *Cf. Panhandle E. Pipe Line Co. v. FERC*, 198 F.3d 266 (D.C. Cir. 1999) (holding that there is nothing for a court to review when an agency has never issued a final and binding judgment that has the force of law).

Sprint further argues that the FCC unreasonably failed to determine that AT&T's refusal to pay was unjust and discriminatory in violation of 47 U.S.C. §§ 201(b) and 202(a). *See* Petitioner Sprint's Br. at 35-37. The *Declaratory Ruling* held that it need not address this question until the trial court determined whether there was a contract. *Declaratory Ruling*, 17 F.C.C.R. at 13,200. And during oral argument, counsel for Sprint acknowledged that the Commission has

considered claims of discrimination and unreasonableness in the past through complaints filed pursuant to § 208 of the Communications Act. Therefore, the Commission was not obliged to review these discrimination claims in a declaratory ruling issued to address the two specific questions referred by the district court. Whether AT&T's refusal to pay violates §§ 201 and 202 is beyond the scope of the referral. If the occasion arises, the parties agree that Sprint is free to file a complaint under 47 U.S.C. § 208 seeking redress for alleged unjust and discriminatory practices. Since the Commission properly deferred consideration of Sprint's claims, there is nothing for this court to review.

Finally, Sprint argues that the FCC failed in its statutory duty to regulate interstate access charges and CMRS carriers by not requiring AT&T to pay the termination charges Sprint billed to AT&T. Petitioner Sprint's Br. at 19-21. Sprint did not raise this argument with the Commission, so it is not properly before this court. Furthermore, the FCC's regulation of access charges and CMRS carriers is a matter of policy that is beyond the scope of the referral questions answered by the *Declaratory Ruling*. The basic rationale for the ripeness doctrine is to prevent courts "from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs.*, 387 U.S. at 148. The regulation of access charges for CMRS providers and other carriers is currently the subject of proposed rulemaking. *See In the Matter of Developing a Unified Intercarrier Compensation Regime*, Notice of Proposed Rulemaking, 16 F.C.C.R. 9610 (2001), *reported at* 66 Fed. Reg. 28,410 (F.C.C. 2001). We decline to interfere with those proceedings.

## III. CONCLUSION

For the foregoing reasons, the petitions for review are dismissed.