# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 14, 2005        Decided February 3, 2006

No. 04-5221

NATIONAL ASSOCIATION OF HOME BUILDERS,
APPELLANT

v.

U.S. ARMY CORPS OF ENGINEERS *ET AL.*,
APPELLEES

———

No. 04-5222

NATIONAL STONE, SAND AND
GRAVEL ASSOCIATION *ET AL.*,
APPELLANTS

v.

U.S. ARMY CORPS OF ENGINEERS *ET AL.*,
APPELLEES

———

No. 04-5223 & 04-5224

NATIONAL WILDLIFE FEDERATION;
NORTH CAROLINA WILDLIFE FEDERATION; SIERRA CLUB,
APPELLANTS

v.

U.S. ARMY CORPS OF ENGINEERS *ET AL.*,
APPELLEES

———

Appeals from the United States District Court
for the District of Columbia
(No. 01cv00274)
(No. 01cv00320)

———

*Rafe Petersen* argued the cause for the joint appellants, National Association of Home Builders and National Stone, Sand and Gravel Association *et al. Lawrence R. Liebesman, Virginia S. Albrecht, Karma B. Brown, Duane J. Desiderio* and *Felicia K. Watson* were on brief. *Ethan Arenson* entered an appearance.

*John A. Bryson*, Attorney, United States Department of Justice, argued the cause for the federal appellees, United States Army Corps of Engineers *et al. Greer S. Goldman, Angeline Purdy* and *Ronald M. Spritzer*, Attorneys, United States Department of Justice, were on brief.

*Howard I. Fox* argued the cause for the environmental appellees/cross-appellants, National Wildlife Federation *et al*.

*M. Reed Hopper* was on brief for *amicus curiae* Pacific Legal Foundation in support of the appellants. *Robin L. Rivett* entered an appearance.

Before: GINSBURG, *Chief Judge*, and HENDERSON and RANDOLPH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The appellant organizations, the National Association of Home Builders, National Stone, Sand and Gravel Association, American Road and Transportation Builders Association and the Nationwide Public Projects Coalition, (collectively, Industry) brought these actions in the district court to challenge a regulation jointly promulgated by the United States Environmental Protection Agency (EPA) and the United States Army Corps of Engineers (Corps) to implement the Clean Water Act (CWA). *See* Further Revisions to the Clean Water Act Regulatory Definition of "Discharge of Dredged Material," 66 Fed. Reg. 4550, 4575 (Jan. 17, 2001) (codified at 33 C.F.R. § 323.3 and 40 C.F.R. § 232.2).[1] Section 404(a) of the CWA authorizes the Corps to issue permits to discharge "dredged or fill material" into navigable waters. 33 U.S.C. § 1344(a). Under the Corps' regulations, permits are "required for the discharge of dredged or fill material into waters of the United States." 33 C.F.R. § 323.3(a). The challenged portions of the regulation provide that the Corps will "regard the use of mechanized earth-moving equipment" in waters as resulting in such "a discharge" (requiring a permit) unless "project-specific evidence" shows that the dredging results in "only incidental fallback" and defines "[i]ncidental fallback" as "redeposit of small volumes of dredged material incidental to excavation activity" if the material "falls back to substantially the same place as the initial removal." *Id*. § 323.2(d)(2)(i), (ii); *see also* 40 C.F.R. § 232.2(2)(i), (ii). Industry objects to the two

---

[1]The Corps has jurisdiction under CWA section 404, 33 U.S.C. § 1344, over discharge of dredged and fill material; EPA has jurisdiction under CWA section 402, 33 U.S.C. § 1342, over discharge of other pollutants.

cited provisions of section 323.2 on the grounds that (1) the first creates an impermissible rebuttable presumption that all dredging results in unlawful discharge and (2) the second defines "incidental fallback" in terms of volume and thereby exceeds the scope of the Corps' authority under CWA section 404. The district court dismissed the actions for lack of ripeness. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 311 F. Supp. 2d 91 (D.D.C. 2004). Reviewing the district court's dismissal *de novo*, *Battle v. FAA*, 393 F.3d 1330, 1332 (D.C. Cir. 2005); *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 640 (D.C. Cir. 2002), we conclude Industry's challenge to the regulation is ripe for review and, accordingly, reverse and remand to the district court.

**I.**

Section 301 of the CWA generally prohibits "the discharge of any pollutant," 33 U.S.C. § 1311(a), which is defined in relevant respect as "any addition of any pollutant to navigable waters from any point source," *id*. § 1362(12). The Congress created an exception to the general prohibition for a discharge that is "in compliance with [section 1311] and sections 1312, 1316, 1317, 1328, 1342, and 1344 of [Title 33]." *Id*. § 1311(a). Section 404 of the CWA (referenced in the statutory exception as section 1344 of Title 33) provides that the Corps "may issue permits, after notice and opportunity for public hearings[,] for the discharge of dredged or fill material into the navigable waters at specified disposal sites." *Id*. § 1344 (alteration added). In 1986 the Corps issued a regulation which defined "discharge of dredged material" as "any addition of dredged material into the waters of the United States" but stipulated that "[t]he term does not include *de minimis*, incidental soil movement occurring during normal dredging operations." Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg. 41,206, 41,232 (Nov. 13, 1986) (to be codified at 33 C.F.R. § 323.2(d)). Thus, a permit was required only for dredging activity that

resulted in a "discharge" under this definition. In 1993, as part of a settlement agreement in *North Carolina Wildlife Fed'n v. Tulloch*, No. C90-713-CIV-5-BO (E.D.N.C.) (stipulated dismissal Mar. 4, 1992), the Corps and EPA amended the regulation to define "discharge of dredged material" as "any addition of dredged material into, *including any redeposit of dredged material within*, the waters of the United States," without the *de minimis* exception. Clean Water Act Regulatory Programs, 58 Fed. Reg. 45,008, 45,035 (Aug. 25, 1993) (codified at 33 C.F.R. § 323.2(d)(1) and 40 C.F.R. § 232.2(1); emphasis added).[2] This expanded definition of "discharge" in the regulation, commonly called the "Tulloch Rule" or "Tulloch I," broadened the scope of activity for which a dredging permit was required.

Industry trade associations immediately filed an action challenging the amended definition and the district court issued a decision invalidating the regulation. *Am. Mining Cong. v. U.S. Army Corps of Eng'rs*, 951 F. Supp. 267 (D.D.C. 1997). On appeal, this court affirmed the district court, concluding that "the straightforward statutory term 'addition' cannot reasonably be said to encompass the situation in which material is removed from the waters of the United States and a small portion of it happens to fall back." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1404 (D.C. Cir. 1998). We explained that, "[b]ecause incidental fallback represents a net withdrawal, not an addition, of material, it cannot be a discharge" and questioned "how there can be an addition of *dredged material*

---

[2]The amended regulation did provide an exemption for "any incidental addition, including redeposit, of dredged material associated with any activity that does not have or would not have the effect of destroying or degrading an area of waters of the United States." 58 Fed. Reg. at 45,036 (codified at 33 C.F.R. § 323.2(d)(4)(i) and 40 C.F.R. § 232.2(3)(i)).

when there is no addition of *material*." *Id*. at 1404 (emphasis original).

In 2000 the Corps and EPA proposed a new rule which added the following language to the definition:

> A discharge of dredged material shall be presumed to result from mechanized landclearing, ditching, channelization, in-stream mining, or other mechanized excavation activity in waters of the United States. This presumption is rebutted if the party proposing such an activity demonstrates that only incidental fallback will result from its activity.

Further Revisions to the Clean Water Act Regulatory Definition of "Discharge of Dredged Material," 65 Fed. Reg. 50,108, 50,117 (Aug. 16, 2000) (to be codified at 33 C.F.R. § 323.2(d)(2) and 40 C.F.R. § 232.2(i)). In 2001 the Corps and EPA issued a final rule, known as "Tulloch II," which replaced the rebuttable presumption framework with the following provision:

> The Corps and EPA *regard* the use of mechanized earth-moving equipment to conduct landclearing, ditching, channelization, in-stream mining or other earth-moving activity in waters of the United States as resulting in a discharge of dredged material *unless project-specific evidence shows that the activity results in only incidental fallback*. This paragraph (i) does not and is not intended to shift any burden in any administrative or judicial proceeding under the CWA.

66 Fed. Reg. at 4575 (codified at 33 C.F.R. § 323.2(d)(2)(i) and 40 C.F.R. § 232.2(2)(i) (emphasis added)). The final rule further added a definition of "incidental fallback" (with examples):

> Incidental fallback is the redeposit of *small volumes* of dredged material that is incidental to excavation activity in waters of the United States when such material falls back to substantially the same place as the initial removal. Examples of incidental fallback include soil that is disturbed when dirt is shoveled and the back-spill that comes off a bucket when such small volume of soil or dirt falls into substantially the same place from which it was initially removed.

*Id.* (codified at 33 C.F.R. § 323.2(d)(2)(ii) and 40 C.F.R. § 232.2(2)(ii) (emphasis added)).

On February 6, 2001 Industry filed this action under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, (APA) challenging "Tulloch II" as exceeding the Corps' and EPA's statutory authority.[3] In a decision dated March 31, 2004, the district court (treating the agencies' summary judgment motion as a motion to dismiss) granted the motion, concluding that Industry's challenge was not ripe because (1) the issues would not be fit for review until the Corps actually applied them in concrete factual situations and (2) delaying review would

---

[3]The intervenor-appellees, three environmental organizations, contend the district court lacked jurisdiction under the APA because section 323.2(d)(2) implements section 301(a) rather than section 404 of the CWA and therefore exclusive jurisdiction to decide a challenge lies with the courts of appeals under CWA section 509(b)(1)(E), 33 U.S.C. § 1369(b)(1)(E) (vesting jurisdiction in courts of appeals for "[r]eview of the Administrator's action . . . in approving or promulgating any effluent limitation or other limitation under section 1311 [of Title 33]"). "Tulloch II," like "Tulloch I," plainly implements section 404 in prescribing when a permit is required and is therefore properly challenged in the district court under the APA, as occurred in *National Mining Ass'n*. *See* 145 F.3d at 1404 (discussing district court's ability to enjoin application of "Tulloch I").

impose no hardship on Industry members. Industry filed timely notices of appeal of the order of dismissal.

**II.**

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)); *accord Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998). "Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (citing *Abbott Labs.*, 387 U.S. at 149). As we recently restated:

> Under the [ripeness] doctrine's first prong, "we look to see whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir. 1998) (internal quotation marks omitted), *cert. denied sub nom. Appalachian Power Co. v. EPA*, 527 U.S. 1021 (1999). And under the second, we consider "not whether [the parties] have suffered any 'direct hardship,' but rather whether *postponing* judicial review would impose an undue burden on them or would benefit the court." *Harris* [*v. FAA*, 353 F.3d 1006, 1012 (D.C. Cir. 2004)]; *see also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S.

726, 733 (1998); *AT&T v. FCC*, 349 F.3d 692, 700, 702 (D.C. Cir. 2003).

*Village of Bensenville v. FAA*, 376 F.3d 1114, 1120 (D.C. Cir. 2004) (emphasis original; alterations added; parallel citations omitted).

The district court acknowledged that the issues raised are "purely legal" and "[f]inality is not a problem" but concluded Industry's challenge was not fit for review because "both the court and the agencies would benefit from letting the questions presented here 'arise in some more concrete and final form.' " 311 F. Supp. 2d at 97-98 (quoting *State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 479 (D.C. Cir. 1986)). In so concluding, the district court adopted the defendants' position that "determining what is a regulable discharge will require project-specific, case-by-case analysis," 311 F. Supp. 2d at 98, as alluded to in the "Tulloch II" preamble:

> [T]he determination of whether an activity results in a regulable discharge of dredged material or produces only incidental fallback involves consideration of the location and the amount of the redeposit. Because of the fact-specific nature of the assessment of these factors, and their interrelated nature, we do not believe it to be feasible or appropriate to establish hard and fast cut-off points for each of these factors. Rather, the totality of the factors will be considered in each case.

66 Fed. Reg. at 4553. We conclude that the district court's reasoning does not support postponing review for lack of ripeness.

While the final determination of whether to require a permit in a given case will, as is usual in an agency adjudication, rest on case-specific findings, this fact does not diminish the fitness of "Tulloch II" for review. Industry objects to two features of the regulation: (1) the decision to "regard" any earth-moving

activity in United States waters "as resulting in a discharge of dredged material unless project-specific evidence shows" otherwise, which Industry claims simply restates (rather than deleting) the allegedly impermissible rebuttable presumption framework included in the proposed rule, and (2) the focus on volume to determine whether or not activity resulting in fallback is "incidental," *cf. Nat'l Mining Ass'n*, 145 F.3d at 1404 ("Because incidental fallback represents a net withdrawal, not an addition, of material, it cannot be a discharge."). All agree that the issues raised are "purely legal." "[A] purely legal claim in the context of a facial challenge, such as [Industry's] claim, is 'presumptively reviewable.' " *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1282 (D.C. Cir. 2005) (quoting *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 757 (D.C. Cir. 2003)). The legality *vel non* of the two challenged features will not change from case to case or become clearer in a concrete setting. As in *National Mining Ass'n*, Industry's objection is to the *"faithful* application" of the regulation, 145 F.3d at 1408 (emphasis original), which Industry claims facially exceeds the agencies' statutory authority, and is not "intertwined with how the Commission might exercise its discretion in the future," *Sprint Corp. v. FCC*, 331 F.3d 952, 954 (D.C. Cir. 2003). As in *National Mining Ass'n*, the ripeness doctrine is inapplicable because Industry's claim rests not "on the assumption that the agency will exercise its discretion unlawfully" in applying the regulation but on whether "its *faithful* application would carry the agency beyond its statutory mandate," 145 F.3d at 1408 (internal citation omitted; emphasis original).

Turning to the hardship prong of the ripeness test, we find that it poses no obstacle to Industry. It is true that if the court " 'ha[s] doubts about the fitness of the issue for judicial resolution,' " it will " 'balance the institutional interests in postponing review against the hardship to the parties that will result from delay.' " *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752,

756 (D.C. Cir. 2003) (quoting *Consol. Rail Corp. v. United States*, 896 F.2d 574, 577 (D.C. Cir. 1990)). Nonetheless, where, as is the case here, " 'there are no significant agency or judicial interests militating in favor of delay, [lack of] hardship cannot tip the balance against judicial review.' " *Id*. at 756-57 (quoting *Consol. Rail Corp.*, 896 F.2d at 577). Moreover, it is obvious that Industry will face hardship if review of its challenge is denied for, if left intact, section 323.2(d)(2) will subject to the permitting process every party that engages in dredging which results in more than "incidental" fallback, as determined using the regulation's allegedly unlawful framework and volume determinant. Each such dredger therefore faces the choice of applying for a permit for activities Industry claims are outside the scope of the Corps' and EPA's authority under section 404 or face civil or criminal enforcement penalties for failing to do so, *see* 33 U.S.C. § 1319(b), (c), (d). Thus, the regulation is reviewable as " 'a substantive rule which as a practical matter requires the [appellants] to adjust [their] conduct immediately.' " *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

For the foregoing reasons, we conclude that Industry's challenge is ripe for review. Accordingly, we reverse the district court's order of dismissal and remand for review of the merits of Industry's challenge.

*So ordered*.