KAVANAUGH, Circuit Judge,
with whom Chief Judge SENTELLE and Circuit Judge HENDERSON join, dissenting:
From 2003 to 2006, millions of Americans paid excessive taxes on long-distance telephone calls. In 2006, the Government announced that it would refund the overpaid taxes. In IRS Notice 2006-50 (in what we will refer to as the 2006 “refund rules”), the Government established a simple process for obtaining refunds. Taxpayers who wanted to claim a standard refund amount — ranging from $30 to $60— could simply check a box on their 2006 income tax returns. Those who wished to claim an amount greater than the standard amount could file a Form 8913 with their 2006 income tax returns and itemize the refund due. And those who would not otherwise file a tax return for 2006 could file a newly created Form 1040EZ-T to claim the standard amount, and attach *737 Form 8913 to claim an amount greater than the standard. Those who missed out when filing their 2006 tax returns could file' — -and even today, still can file — amended 2006 returns to claim the refund. Someone unsatisfied with the refund amount or with the IRS’s refund rules could file a tax refund suit in district court or the Court of Federal Claims. See 28 U.S.C. § 1346(a)(1).
Approximately 90 million Americans followed those simple instructions and promptly received their refunds. As remedial government programs go, this one worked reasonably well.[1]
The ten individual plaintiffs in this case were aware of the 2006 refund rules. But so far as the record reveals, none of them chose any of the readily available alternatives for obtaining a refund. None checked the standard refund box on their 2006 tax returns. Nor did any file a Form 8913 with their 2006 tax returns to claim a refund amount greater than the standard refund. Nor did any file a Form 1040EZ-T. Nor did any file a tax refund suit to complain about the amount available from the IRS or the refund rules.
Instead, plaintiffs decided to up the ante. They filed a purported class-action lawsuit in U.S. District Court. Plaintiffs sued under the Administrative Procedure Act, claiming that the IRS’s 2006 refund rules were promulgated without proper notice and that the refund scheme would not fully compensate them for their overpaid taxes. Plaintiffs seek declaratory and injunctive relief. They want a judicial declaration that the refund scheme is unlawful and an injunction ordering the Government to devise a new refund process so as to correct the alleged flaws.
The reader may wonder why plaintiffs didn’t simply file the relevant forms with the IRS to get refunds, and if dissatisfied with the amounts they received or with the IRS’s refund rules, bring individual tax refund suits. After all, each plaintiff could have raised complaints about the refund rules in such a case, and each plaintiffs litigation would have long since concluded by now. The answer seems to be that plaintiffs are litigating primarily on behalf of others, not themselves. Plaintiffs’ ultimate objectives are class certification and a court order that the U.S. Government pay billions of dollars in additional refunds to millions of as-yet-unnamed individuals who never sought refunds from the IRS or filed tax refund suits. It seems that plaintiffs have deliberately avoided filing individual refund claims with the IRS and filing tax refund suits because they think they have a better chance of obtaining class certification if they don’t take those steps. And class certification is a necessary prerequisite to the class-wide jackpot plaintiffs are seeking here.
In any event, regardless of this case’s unusual background and its potentially large effect on the U.S. Treasury, the present appeal raises only a straightforward legal question.
The issue, boiled down to its essentials, is whether plaintiffs can raise their objections to the 2006 refund rules in this APA suit — or instead must raise their claims in tax refund suits after first filing refund claims with the IRS. It is important to underscore that the fundamental issue here is timing: It concerns when plaintiffs *738 can raise their objections to the 2006 refund rules in court, not whether plaintiffs can raise their objections to the 2006 refund rules in court.
For two alternative reasons, plaintiffs cannot maintain this APA suit. First, the APA itself bars this suit because plaintiffs have an adequate alternative judicial remedy, namely tax refund suits. Second, under the ripeness doctrine, plaintiffs must file refund claims with the IRS before bringing suit to challenge the 2006 refund rules. We will address each point in turn.
I
The Government contends that the Administrative Procedure Act itself bars plaintiffs from maintaining this APA suit. See Gov’t Br. at 63. We agree. Under §§ 703 and 704 of the APA, plaintiffs cannot maintain this APA suit because they have an alternative congressionally specified judicial forum in which to pursue their complaints about the 2006 refund rules- — • namely, a tax refund suit.
The APA provides for judicial review of agency action. But the APA may not be invoked when Congress has specified other judicial review procedures. Section 703 of the APA states: “The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute,” provided that the statutorily specified review proceeding is not “inadequa[te].” 5 U.S.C. § 703 (emphasis added). Relatedly, § 704 of the APA provides: “Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.” 5 U.S.C. § 704 (emphasis added).
For our purposes, both provisions make the same point: A party cannot bring a freestanding APA suit when Congress has specified a different judicial review procedure “relevant to the subject matter,” so long as that congressionally specified review procedure is “adequate.” See, e.g., Attorney General’s Manual on the Administrative Procedure Act 101 (1947) (describing adequate remedy under § 704 by cross-reference to § 703).[2]
As the Supreme Court has explained, the APA “does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.” Bowen v. Massachusetts, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).[3]
*739 The Supreme Court has summarized the key principle in terms that are directly on point in this case: “Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.” Id.; see also Darby v. Cisneros, 509 U.S. 137, 146, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (“Congress intended by [§ 704] simply to avoid duplicating previously established special statutory procedures for review of agency actions.”).
Here, Congress has established a judicial procedure that, to use the terms of § 703, is “relevant to the subject matter” — namely, a tax refund suit. Section 1346(a)(1) of Title 28 provides:
The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of ... [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....
As the Supreme Court and this Court have explained on many occasions, the tax refund suit is a statutorily designed judicial procedure for a taxpayer to wrangle with the IRS over taxes, refunds, or the legality of IRS tax collection or refund practices. See generally United States v. Clintwood Elkhom Mining Co., 553 U.S. 1, 4, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008); Hibbs v. Winn, 542 U.S. 88, 103-04, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004); United States v. Williams, 514 U.S. 527, 536, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); Alexander v. “Americans United” Inc., 416 U.S. 752, 762, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); Bob Jones Univ. v. Simon, 416 U.S. 725, 746-47, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); Inv. Annuity, Inc. v. Blumenthal, 609 F.2d 1, 9 (D.C.Cir.1979).
The only remaining question is whether the tax refund suit is “adequate” here. It plainly is. In tax refund suits, plaintiffs and others similarly situated could obtain judicial review of their complaints about the 2006 refund rules. In such suits, plaintiffs could obtain the larger refunds *740 they seek,[4] as well as appropriate injunctive or declaratory relief. See South Carolina v. Regan, 465 U.S. 367, 373-81 & 377-78 n. 16, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984); Americans United, 416 U.S. at 761-62, 94 S.Ct. 2053; Bob Jones, 416 U.S. at 748 n. 22, 94 S.Ct. 2038.[5]
Because plaintiffs can raise their objections to the 2006 refund rules and obtain tax refunds and appropriate equitable relief in a tax refund suit, the tax refund suit is an adequate alternative judicial procedure.[6] The majority opinion seems to suggest that the tax refund suit is not adequate because the 2006 refund rules are alleged to be unlawful. See Maj. Op. at 732-33. That badly misstates the relevant issue. The merits of plaintiffs’ claims are distinct from the adequacy of the specified judicial review procedure. The proper question here is whether the tax refund *741 suit is an adequate forum for plaintiffs to raise their arguments that the 2006 refund rules are unlawful. The answer is yes.[7]
The majority opinion seems to think that, in invoking §§ 703 and 704, we are advancing an exhaustion argument. See Maj. Op. at 731-33. We are not. There is a difference between (i) the doctrine requiring exhaustion of administrative remedies and (ii) the §§ 703/704 principle that applies when, as here, Congress has provided alternative judicial procedures. Bowen, 487 U.S. at 903, 108 S.Ct. 2722. The Supreme Court in Bowen distinguished those two principles. Id. at 902-OS, 108 S.Ct. 2722. The majority opinion here melds them into an undifferentiated stew and then uses administrative exhaustion case law to try to respond to our §§ 703/704 argument. The cases concerning exhaustion of administrative remedies are not responsive to our §§ 703/704 argument. The §§ 703/704 question is whether the tax refund suit is the proper judicial forum specified by Congress for plaintiffs to raise their claims.[8]
In response to this point, the majority opinion relies heavily on McCarthy v. Madigan, 503 U.S. 140, 148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), which says that administrative exhaustion sometimes may not be required when a plaintiff challenges the adequacy of the administrative procedures themselves. Reliance on McCarthy simply highlights the majority opinion’s confusion about the §§ 703/704 issue and about the distinction between exhaustion of administrative remedies and alternative judicial procedures. In tax refund suits, plaintiffs can raise all of their arguments— including about the adequacy of the administrative exhaustion requirement that applies in tax refund suits as a result of 26 U.S.C. § 7422(a). To be very clear and very specific; Plaintiffs here could try to skip the administrative process altogether and directly file tax refund suits under 28 U.S.C. § 1346(a)(1). In such tax refund suits, if plaintiffs had not first exhausted their administrative remedies, the IRS no doubt would move to dismiss the suits because of plaintiffs’ failure to exhaust *742 pursuant to 26 U.S.C. § 7422(a). At that point, plaintiffs could raise to the courts their McCarthy-based argument that they do not have to exhaust administrative remedies — for example, if they believe the exhaustion requirement is unconstitutional.[9] And the courts considering the refund suits could address plaintiffs’ McCarthy-based no-need-to-exhaust arguments. The courts may well reject such attempts to evade the exhaustion requirement. Even so, the burden of participating in a statutorily imposed exhaustion requirement does not make an alternative judicial forum inadequate for purposes of APA §§ 703/704. The key point is that in tax refund suits, plaintiffs could raise any complaint they have about the 2006 tax refund rules— including any complaint they have about the exhaustion requirement that attaches to tax refund suits. Given that undisputed fact, McCarthy is no answer to our main point here: APA §§ 703/704 require dismissal of this APA suit because the tax refund suit is the congressionally specified judicial forum “relevant to the subject matter.” 5 U.S.C. § 703.
In sum, the tax refund suit is the proper judicial forum for plaintiffs to raise their complaints about the 2006 refund rules. Because the tax refund suit is a special statutory judicial review proceeding relevant to the subject matter and because it is an adequate forum, plaintiffs cannot maintain this APA challenge to the 2006 refund rules.
II
The Government alternatively raises a mix of administrative exhaustion, finality, and ripeness principles in arguing that plaintiffs must file refund claims with the IRS before suing. See Gov’t Br. at 54-69. Those three doctrines are notoriously intermingled. See 2 Richard J. Pierce, Jr., Administrative Law Treatise § 15.17 (5th ed.2010) (exhaustion, finality, and ripeness “overlap significantly, and ... are sometimes indistinguishable”); Ticor Title Ins. Co. v. FTC, 814 F.2d 731 (D.C.Cir.1987) (three-judge panel issued three separate opinions for a unanimous conclusion: one based on exhaustion, one based on finality, and one based on ripeness).
We conclude that the ripeness doctrine precludes consideration of plaintiffs’ claims at this time and requires plaintiffs to file refund claims with the IRS before suing. (The ripeness bar is separate from and in addition to the APA §§ 703/704 bar that we discussed above.)
“Ripeness is a justiciability doctrine” that is “drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.” Nat’l Park Hospitality Ass’n v. Dep’t of Interior, 538 U.S. 803, 807-08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). A challenge to an agency regulation is ripe for judicial review where (i) the issue is fit for decision and (ii) delay would impose hardship on the plaintiffs. In the classic formulation, the Supreme Court stated that a claim is ripe where “the legal issue presented is fit for judicial resolution, and where [the] regulation requires an immediate and significant change in the plaintiffs’ conduct of their affairs with serious penalties attached to noncompliance.” Abbott Laboratories v. Gardner, 387 U.S. 136, 153, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).
The principal issue here concerns the second prong of the ripeness doctrine: hardship. Do the 2006 refund rules require, in the words of Abbott Laboratories, *743 “an immediate and significant change in the plaintiffs’ conduct of their affairs with serious penalties attached to noncompliance?” Id. at 153, 87 S.Ct. 1507. The answer is obviously no. Unlike a regulation that imposes obligations or prohibits conduct (backed by sanctions), a payment scheme like that established by the 2006 refund rules does not require “an immediate and significant change” in plaintiffs’ conduct.
To borrow the words of a recent Supreme Court ripeness decision, the 2006 tax refund procedure “does not command anyone to do anything or to refrain from doing anything; it does not grant, withhold, or modify any formal legal license, power, or authority; it does not subject anyone to any civil or criminal liability; and it creates no legal rights or obligations.” Natl Park Hospitality Ass’n, 538 U.S. at 809, 123 S.Ct. 2026 (applying Abbott Laboratories and quoting Ohio Forestry Ass’n, Inc. v. Sierra Club, 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998)) (alterations omitted). Rather, the refund rules mark a path for taxpayers to obtain money back from the Government. The refund scheme “leaves a [taxpayer] free to conduct its business as it sees fit.” Nat’l Park Hospitality Ass’n, 538 U.S. at 810, 123 S.Ct. 2026. Thus, requiring plaintiffs to challenge the refund rules only after they apply to the IRS for refunds will have “no irremediably adverse consequences” for plaintiffs. Id. (alteration omitted).[10]
Moreover, it is well settled that the mere “burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship” for purposes of the ripeness analysis. AT&T Corp. v. FCC, 349 F.3d 692, 702 (D.C.Cir. 2003); see also Ohio Forestry Ass’n, 523 U.S. at 734-35, 118 S.Ct. 1665 (burden of going through additional proceedings is not a sufficient hardship to render an agency action ripe for review); Nuclear Energy Institute, Inc. v. EPA 373 F.3d 1251, 1313 (D.C.Cir.2004) (requiring party to raise claims in agency and judicial proceedings “works no hardship ... sufficient to render its claims ripe”); Clean Air Implementation Project v. EPA 150 F.3d 1200, 1205 (D.C.Cir.1998) (requiring party to raise claim in agency proceeding is not sufficient hardship for purposes of ripeness); Florida Power & Light Co. v. EPA 145 F.3d 1414, 1421 (D.C.Cir.1998) (“The only conceivable hardship Florida P & L will endure as a result of postponement is the burden of participating in further administrative and judicial proceedings. Such claims, however, do not constitute sufficient hardship for the purposes of ripeness.”). Here, therefore, the burden of filing a refund claim with the IRS before suing does not constitute sufficient hardship for purposes of the Abbott Laboratories ripeness inquiry.
Plaintiffs and the majority opinion suggest that it would be easier to mount one APA challenge rather than a series of *744 individual tax refund suits. See Maj. Op. at 731-32, 733. But as the Supreme Court has explained in a similar context, that theory “does not explain ... why one initial site-specific victory (if based on the Plan’s unlawfulness) could not, through preclusion principles, effectively carry the day. And, in any event, the Court has not considered this kind of litigation cost saving sufficient by itself to justify review in a case that would otherwise be unripe.” Ohio Forestry Ass’n, 523 U.S. at 734-35, 118 S.Ct. 1665 (citation omitted); see also Clean Air Implementation Project, 150 F.3d at 1206. The Supreme Court. has stated that the “case-by-case approach that this requires” is “the traditional, and remains the normal, mode of operation of the courts.” Lujan v. Nat’l Wildlife Fed’n, 497 U.S. 871, 894, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).
Put simply, the general ripeness principle that emerges from the case law and that governs here is this: When an agency rule prohibits conduct backed by sanctions or imposes an obligation backed by sanctions, an aggrieved party often may challenge the rule immediately and need not wait to challenge it in its defense to an enforcement action after violating the rule. The rationale is that a party should not be forced into the “dilemma” of violating an allegedly unlawful rule and risking a heavy sanction “if they’ve guessed wrong and the rule is upheld in the penalty proceeding.” Abbs v. Sullivan, 963 F.2d 918, 926 (7th Cir.1992) (internal citations omitted); see also Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (describing this “dilemma”). By contrast, as the Supreme Court decided in Reno v. Catholic Social Services, when an agency rule establishes criteria for an individual to obtain money or a benefit of some kind from the government, a party must first apply to the government for the money or benefit before bringing suit to challenge the agency rule. See 509 U.S. at 57-61, 113 S.Ct. 2485. Requiring a party to apply for the money or benefit before suing to challenge the agency rule does not pose the Abbott Laboratories “dilemma” because the party will not face any sanctions if the rule is ultimately upheld.[11]
Allowing this APA suit to go forward at this time is flatly inconsistent with the ripeness principles articulated in cases such as Abbott Laboratories, Reno v. Catholic Social Services, and National Park Hospitality Association. Plaintiffs must file a refund claim with the IRS before bringing suit.
It is true that our Court — albeit not the Supreme Court — has sometimes permitted judicial review when an issue was fit for resolution, notwithstanding a lack of hardship to the plaintiffs from waiting, so long as there were “no significant agency or judicial interests militating in favor of delay.” Nat’l Ass’n of Home Builders v. U.S. Army Corps of Eng’rs, 440 F.3d 459, 465 (D.C.Cir.2006) (quoting Nat’l Mining Ass’n v. Fowler, 324 F.3d 752, 756-57 (D.C.Cir.2003)); see also Electric Power Supply Ass’n v. FERC, 391 F.3d 1255, 1263 (D.C.Cir.2004) (“The hardship prong under the ripeness doctrine is largely irrelevant in cases ... in which neither the agency nor the court have a significant interest in postponing review.”); AT&T Corp. v. FCC, 349 F.3d 692, 700 (D.C.Cir. 2003) (“where there are no institutional interests favoring postponement of review, *745 a petitioner need not satisfy the hardship prong”); Action for Children’s Television v. FCC, 59 F.3d 1249, 1258 (D.C.Cir.1995) (“there is no need to consider the hardship to the parties of withholding court consideration, [where] there would be no advantage to be had from delaying review”) (internal quotation marks and citation omitted).
But here, there are “significant agency or judicial interests militating in favor of delay.” Nat’l Ass’n of Home Builders, 440 F.3d at 465. Those interests are some of the very interests that are protected by the ripeness doctrine: the courts’ interest in not “entangling themselves in abstract disagreements over administrative policies,” and the IRS’s interest in being protected from “judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.” Abbott Laboratories, 387 U.S. at 148^49, 87 S.Ct. 1507; see also Ohio Forestry Ass’n, 523 U.S. at 735-37, 118 S.Ct. 1665. For example, plaintiffs claim that it was too difficult for taxpayers to gather the paperwork needed to justify a claim for more than the standard refund amount. That is precisely the kind of claim where court review would benefit from prior agency application and analysis. Indeed, if the agency agreed with a taxpayer’s argument on that issue, there would be no need for judicial involvement at all. Also, plaintiffs claim that the IRS did not provide adequate notice of the refund procedure. That'too is the kind of claim where judicial resolution would benefit from a considered agency analysis of the design and limitations of the notification process.
In any event and perhaps more to the point, we don’t need to guess how the Abbott Laboratories test applies to the kind of agency rule at issue here. The Supreme Court has told us how — in cases such as Reno v. Catholic Social Services and National Park Hospitality Association. Those cases stand for the proposition that pre-application challenges to rules that set forth criteria for government payments or benefits are not ripe.
Under the APA, plaintiffs must file tax refund suits to raise their complaints about the 2006 refund rules. Alternatively, the ripeness doctrine precludes plaintiffs from suing until after they file refund claims with the IRS. For either of those two alternative and independent reasons, plaintiffs’ APA suit should be dismissed.[12] We respectfully dissent.

. The majority opinion suggests that the IRS's refund program didn’t work well because the Government did not give refunds to people who did not request refunds. See Maj. Op. at 721 n. 4. We find that an odd criticism. The IRS aggressively publicized the refund procedure so that people who were due refunds would know how to request them. Ninety million taxpayers managed to do so.

. Those § 703 and § 704 requirements are related to a bedrock principle of the American legal system: Equitable relief is not available when there is an adequate remedy at law. See Judiciary Act of 1789, § 16, 1 Stat. 73, 82; Bob Jones Univ. v. Simon, 416 U.S. 725, 742 n. 16, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (referring to "the background of general equitable principles disfavoring the issuance of federal injunctions against taxes, absent clear proof that available remedies at law were inadequate"); Richards v. Delta Air Lines, Inc., 453 F.3d 525, 531 n. 6 (D.C.Cir.2006) ("The general rule is that injunctive relief will not issue when an adequate remedy at law exists.”).

. Numerous cases have applied that principle. See ICC v. Brotherhood, of Locomotive Engineers, 482 U.S. 270, 282, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987) ("Hobbs Act specifies the form of proceeding for judicial review of ICC orders,” citing § 703); Whitney Nat’l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965) ("where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive”); Garcia v. Vilsack, 563 F.3d 519, 523-25 (D.C.Cir. 2009) (discrimination suit against Department of Agriculture afforded an “adequate remedy in court” and thus precluded APA challenge); Watts v. SEC, 482 F.3d 501, 508 (D.C.Cir.2007) ("a challenge to an agency's refusal to comply with a Rule 45 subpoena *739 should proceed and be treated not as an APA action but as a Rule 45 motion to compel,” citing § 703); Wright v. Dominguez, No. 04-5055, 2004 WL 1636961, at *1 (D.C.Cir. 2004) (de novo district court review of decisions of Equal Employment Opportunity Commission precluded APA challenge to EEOC’s procedures); Women’s Equity Action League v. Cavazos, 906 F.2d 742, 750-51 (D.C.Cir.1990) (individual private suits against institutions afforded adequate remedy to private parties alleging discrimination under Titles VI and IX; Court noted that “under our precedent, situation-specific litigation affords an adequate, even if imperfect, remedy”); Coker v. Sullivan, 902 F.2d 84, 89-90 (D.C.Cir.1990) (judicial review of state administrative hearings and federal suit against offending states afforded adequate remedy in court to preclude APA suit seeking to compel the Department of Health and Human Services to enforce states’ compliance with emergency assistance plans); Cabais v. Egger, 690 F.2d 234, 240-41 (D.C.Cir.1982) (challenge to individual benefit reduction afforded "adequate remedy in court” to Social Security recipients seeking to challenge the Department of Labor’s interpretation of a federal statute); Nassar & Co. v. SEC, 566 F.2d 790, 792 n. 3 (D.C.Cir.1977) (where there was statutory procedure for obtaining review of an SEC order, APA suit for declaratory judgment was barred); Nader v. Volpe, 466 F.2d 261, 266 (D.C.Cir. 1972) ("when Congress has specified a procedure for judicial review of administrative action, courts will not make nonstatutory remedies available without a showing of patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review”) (footnote omitted).

. Plaintiffs acknowledge that they ultimately want additional refunds of the taxes wrongly collected, in addition to equitable relief. Indeed, they would not have standing to challenge the 2006 refund rules unless they wanted additional refunds.

. In challenging the adequacy of tax refund suits, plaintiffs hint that declaratory and injunctive relief might be available only in APA suits, and not in tax refund suits. That is wrong; indeed, the Supreme Court has indicated just the opposite.
To begin with, the Declaratory Judgment Act bars declaratory relief "with respect to Federal taxes,” 28 U.S.C. § 2201(a), and the Anti-Injunction Act bars injunctions "for the purpose of restraining the assessment or collection of any tax,” 26 U.S.C. § 7421(a). By their terms, those statutory bars apply in APA suits as well as in tax refund suits. See 5 U.S.C. § 702 (preserving "other limitations on judicial review”). Therefore, if a taxpayer could obtain equitable relief in an APA suit, as plaintiffs here argue, the taxpayer could also obtain such relief in a tax refund suit. That point alone suffices to show that the tax refund suit is an adequate forum for plaintiffs to seek appropriate declaratory and injunctive relief.
In addition, precedent demonstrates that declaratory relief and injunctive relief are available in tax refund suits. The Supreme Court has indicated that injunctive relief is available in the tax context, despite the terms of the Anti-Injunction Act. See South Carolina v. Regan, 465 U.S. at 373-81 & 377-78 n. 16, 104 S.Ct. 1107; Bob Jones, 416 U.S. at 748 n. 22, 94 S.Ct. 2038. Moreover, the Supreme Court has suggested that injunctive relief would be available only in tax refund suits— and not in APA suits — where, as here, Congress has provided tax refund suits as "an alternative avenue for an aggrieved party to litigate its claims.” South Carolina v. Regan, 465 U.S. at 381, 104 S.Ct. 1107; compare id. at 373-81 & 377-78 n. 16, 104 S.Ct. 1107 (injunction available in nontax-refund suit only because plaintiffs could not pursue tax refund suit) with Bob Jones, 416 U.S. at 748 & n. 22, 94 S.Ct. 2038 (injunction not available in APA suit because plaintiffs could pursue tax refund suit); see also Americans United, 416 U.S. at 761-62, 94 S.Ct. 2053. The Supreme Court has not had occasion to expressly state that it would allow claims for declaratory relief in tax refund suits, although that presumably also would be permitted under the South Carolina v. Regan/Americans United/Bob Jones reasoning. After all, injunctive relief typically entails a declaration plus an order to do or refrain from doing something, meaning that declaratory relief is, in essence, a lesser-included version of injunctive relief. As plaintiffs rightly say, it would be "logically incoherent” and “nonsensical” to allow injunctive relief but forbid declaratory relief. See Cohen Br. at 22, 37; see also California v. Grace Brethren Church, 457 U.S. 393, 408, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) ("there is little practical difference between injunctive and declaratory relief”).
Finally, it bears mention that the Government has acknowledged that plaintiffs could obtain appropriate declaratory and injunctive relief in tax refund suits. See Tr. of Oral Arg. at 39-41.

.Even if there were somewhat greater equitable relief available in this APA suit than in a tax refund suit (which there isn’t), we have said that “the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.’ " Garcia, 563 F.3d at 522 (quoting El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health & Human Services, 396 F.3d 1265, 1272 (D.C.Cir.2005)).

. The majority opinion cites one case from 1987 in which this Court allowed a suit that might have been brought as a refund suit to proceed under the APA. See Foodservice & Lodging Inst., Inc. v. Regan, 809 F.2d 842, 846 (D.C.Cir.1987). But that case did not address the §§ 703/704 point about alternative judicial procedures specified by Congress. It is therefore obviously not a relevant precedent on the §§ 703/704 issue. See Arizona Christian School Tuition Organization v. Winn,U.S. -, 131 S.Ct. 1436, 1448-49, 179 L.Ed.2d 523 (2011) (conclusion overlooked, not raised, or assumed sub silentio in prior cases is not precedent).

. APA §§ 703 and 704 require plaintiffs to bring their claims in tax refund suits; in those tax refund suits, plaintiffs in turn would be statutorily required — absent some legitimate exception to the exhaustion requirement — to first exhaust their administrative remedies. See 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.”).
Contrary to what the Government argues, the § 7422(a) exhaustion requirement would apply not because § 7422(a) itself requires that this APA suit be deemed a tax refund suit preceded by exhaustion of administrative remedies. Rather, the § 7422(a) exhaustion requirement would apply because §§ 703 and 704 of the APA, in conjunction with 28 U.S.C. § 1346(a)(1), require plaintiffs to bring their claims in tax refund suits, and § 7422(a) in turn requires exhaustion in those tax refund suits.

. In the two cases McCarthy cited in describing this exception, the plaintiffs had argued that the exhaustion requirement was unconstitutional. See 503 U.S. at 148, 112 S.Ct 1081.

. See also Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57-61, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (no hardship in requiring aliens to apply for amnesty under agency’s amnesty rules before suing to challenge agency's amnesty rules); Toilet Goods Ass’n, Inc. v. Gardner, 387 U.S. 158, 164-66, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) (no hardship where "the impact of the administrative action could [not] be said to be felt immediately by those subject to it in conducting their day-to-day affairs”); Devia v. NRC, 492 F.3d 421, 427 (D.C.Cir.2007) (claim of hardship "insubstantial” when party "not required to engage in, or to refrain from, any conduct”); Sprint Corp. v. FCC, 331 F.3d 952, 958 (D.C.Cir. 2003) (no hardship where agency action leaves plaintiff “free to conduct its business as it sees fit” and there are no "adverse effects of a strictly legal kind”) (quoting Ohio Forestry Ass’n, 523 U.S. at 733, 118 S.Ct. 1665).

. Professor Pierce has described the Court’s ripeness jurisprudence as precluding “pre-application judicial review of any rule that purports to describe criteria for obtaining any form of government benefit, e.g., social security, veterans benefits, any license, or exemption from any regulatory obligation.” 2 Richard J. Pierce, Jr., Administrative Law Treatise § 15.14 (5th ed.2010).

. In arguing that we should not entertain plaintiffs’ APA claim now, the Government also raises yet another alternative argument: that the Declaratory Judgment Act and the Anti-Injunction Act together bar APA suits challenging IRS refund rules. That argument raises extremely difficult issues of statutory interpretation, as the panel opinions in this case explored. But that statutory question ultimately is not necessary to our resolution of the case because §§ 703/704 of the APA and the ripeness doctrine each independently bar this suit. The majority opinion chides us for not addressing the additional statutory issue regarding the Declaratory Judgment and Anti-Injunction Acts. See Maj. Op. at 723-24. Having found two separate and independent bars to plaintiffs' suit, we see no need to consider the several other objections raised by the Government. Of course, in order to allow this suit to go forward, the majority opinion by contrast must consider and reject each of the Government's objections. That's why the majority opinion needs to address the statutory issue regarding the Declaratory Judgment and Anti-Injunction Acts, and we do not.