# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 20, 2015         Decided July 14, 2015

No. 14-1123

ENERGY FUTURE COALITION, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND GINA
MCCARTHY,
RESPONDENTS

AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS AND
AMERICAN PETROLEUM INSTITUTE,
INTERVENORS

———

On Petition for Review of Final Action of the
United States Environmental Protection Agency

———

*Adam R.F. Gustafson* argued the cause for petitioners. With him on the briefs were *C. Boyden Gray* and *Adam J. White*.

*Anna J. Wildeman* and *Valerie L. Green* were on the brief for *amicus curiae* Governors' Biofuels Coalition in support of petitioners.

*Michael C. Augustini*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the

brief were *John C. Cruden*, Assistant Attorney General, and *Mark M. Kataoka*, Attorney, U.S. Environmental Protection Agency.

*Stacy R. Linden*, *Richard S. Moskowitz*, *Chet M. Thompson*, *Robert Meyers*, and *David Y. Chung* were on the brief for intervenors American Fuel & Petrochemical Manufacturers and American Petroleum Institute in support of respondents.

Before: TATEL, KAVANAUGH, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  The goal of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."   42 U.S.C. § 7401(b).  To help achieve that objective, the Clean Air Act grants EPA authority to regulate vehicle emissions.   As relevant here, EPA has adopted regulations that require vehicle manufacturers to test the emissions of new vehicles. Vehicle manufacturers must conduct emissions testing using a "test fuel."   40 C.F.R. § 1065.701(a).   And under the regulation at issue here, the test fuel must be a fuel that is "commercially available." *Id.* § 1065.701(c).  That regulation implements the statutory directive that "vehicles are tested under circumstances which reflect the actual current driving conditions under which motor vehicles are used, including conditions relating to fuel."  42 U.S.C. § 7525(h).

Petitioners in this case include several biofuel producers.[1] Petitioners want EPA to approve E30, which is a fuel that contains about 30% ethanol, for use as a test fuel. But according to petitioners, E30 is not yet "commercially available," as required by EPA's test fuel regulation.

In this suit, petitioners argue that the test fuel regulation is arbitrary and capricious. We disagree. We therefore deny the petition.

I

Before reaching the merits, we address several threshold arguments raised by EPA regarding the Court's authority to decide the case. We reject each of those arguments.

*First*, petitioners have Article III standing to maintain this suit. They have suffered an injury in fact caused by EPA and redressable by the Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Several of the petitioners produce ethanol. Petitioners want EPA to approve E30 as a test fuel. According to petitioners, EPA's test fuel regulation prohibits the use of E30 as a test fuel. As a direct result of that regulation, petitioners claim that they face a regulatory impediment (what they view as an illegal regulatory impediment) that prevents their product from being used as a test fuel. That qualifies as an injury in fact. *See Abigail Alliance for Better Access to*

---

[1] The biofuel producers are Carbon Green BioEnergy, DENCO II, Iroquois Bio-Energy Company, LSCP, Patriot Renewable Fuels (owned by Patriot Holdings, which is also a petitioner), and Siouxland Ethanol. They are joined as petitioners by ICM, which is a company that designs and builds ethanol plants, and by the biofuel advocacy group Energy Future Coalition.

4

*Developmental Drugs v. Eschenbach*, 469 F.3d 129, 134-35 (D.C. Cir. 2006).

EPA points out that the test fuel regulation is technically directed at vehicle manufacturers, not biofuel producers.  But that does not undermine petitioners' standing.  The standing question in this case is straightforward:  If the Government prohibits or impedes Company A from using Company B's product, does Company B have standing to sue?  Suppose the FDA bans or makes it harder for soda manufacturers to use sugar.  Does a sugar manufacturer have standing to sue?  Or suppose the District of Columbia bans or makes it harder for concession stands to sell hot dogs.  Does a local hot dog manufacturer have standing to sue?  Ordinarily the answer to those questions is yes.  In such cases, both Company A and Company B are "an object of the action (or forgone action) at issue," so "there is ordinarily little question" that they have standing under *Lujan*.  504 U.S. at 561-62; *see also Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (fuel additive manufacturer has standing to challenge EPA emissions testing regulation).  So it is here.

Petitioners have also demonstrated causation and redressability.  Petitioners contend that the "commercially available" requirement is a direct regulatory impediment that prevents their product from being used as a test fuel.  That suffices to show causation. *See Abigail Alliance*, 469 F.3d at 135 (Many "hurdles impeding Alliance members from accessing post-Phase I investigational new drugs have been erected by the FDA.  This is sufficient to establish causation.").

It is true that "vehicle manufacturers may have valid business reasons" other than EPA's test fuel regulation "for not seeking to use" E30 as a test fuel.  EPA Br. 27.  But that

does not undermine causation here. Petitioners simply seek an opportunity to compete in the marketplace. As of now, they claim they are being denied that opportunity because of EPA's regulation. Moreover, if EPA permitted vehicle manufacturers to use E30 as a test fuel, there is substantial reason to think that at least some vehicle manufacturers would use it. Indeed, Ford Motor Company submitted comments to EPA saying that it "supports the development and introduction of an intermediate level blend fuel (E16-E50)" and that the "development of such a fuel would enable the first steps to the development of a new generation of highly efficient internal combustion engine vehicles." J.A. 145.

Finally, petitioners' injury is redressable. Invalidating the "commercially available" requirement would remove a regulatory hurdle to the use of E30 as a test fuel. That is enough to demonstrate redressability. A "plaintiff satisfies the redressability requirement" by showing "that a favorable decision will relieve a discrete injury" to the plaintiff. *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007). The plaintiff "need not show that a favorable decision will relieve" his or her "*every* injury." *Id.*[2]

---

[2] This case differs from *Chamber of Commerce v. EPA*, 642 F.3d 192 (D.C. Cir. 2011). In that case, the Chamber of Commerce and an association of automobile dealers challenged EPA's decision to grant California a waiver from federal preemption under the Clean Air Act. The automobile dealers claimed that EPA's decision injured them because it (i) required automobile manufacturers to alter the mix of vehicles sold in California, putting California dealers at a disadvantage compared to out-of-state dealers and (ii) increased the cost of buying vehicles, decreasing the dealers' profit margins. As relevant here, the Court stated that objective evidence directly undermined petitioners' theory of standing. Multiple empirical studies showed that car manufacturers

Put simply, petitioners have standing to challenge the legality of the test fuel regulation.

*Second*, petitioners are within the zone of interests protected by the Clean Air Act. *See Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388-89, slip op. at 10-11 (2014). The Clean Air Act provides that a "petition for review of . . . any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7607(b)(1). The Clean Air Act seeks to further clean air while at the same time still allowing some productive economic activity, even though that economic activity may result in some emissions of pollutants.

As the Supreme Court has emphasized, the zone of interests test "is not meant to be especially demanding." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210, slip op. at 15 (2012); *see also Ethyl*, 306 F.3d at 1148. Indeed, the "test forecloses suit only when a plaintiff's interests are so marginally related to or

---

were likely to meet California's regulatory requirements without altering the mix of vehicles sold in California. *See id.* at 202-03. Moreover, because car manufacturers could alter their vehicle mix by selling smaller cars in urban areas and larger cars near mountainous areas, and because one of the two car dealers that submitted a standing affidavit was located near a mountainous area, the Court concluded that petitioners had not established that the car dealers would be unable to meet their customers' demands for larger vehicles because of EPA's waiver decision. *See id.* at 203. Given those facts, the Court stated that the petitioners in *Chamber of Commerce* lacked standing. In this case, by contrast, EPA does not cite any similar evidence that undermines petitioners' theory of standing.

inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Match-E*, 132 S. Ct. at 2210, slip op. at 16 (internal quotation marks omitted); *see also Myersville Citizens for a Rural Community, Inc. v. FERC*, 783 F.3d 1301, 1316 (D.C. Cir. 2015).

In *Ethyl*, this Court held that a fuel additive manufacturer fell within the zone of interests under the Clean Air Act and could challenge EPA regulations governing emissions testing for vehicles. *See* 306 F.3d at 1148. Petitioners here challenge an EPA regulation governing emissions testing for vehicles under the same part of the Clean Air Act. We see no principled way to distinguish the fuel additive manufacturer in *Ethyl* from the biofuel producers in this case, a conclusion only strengthened by the Supreme Court's recent cases emphasizing that the zone of interests test is not especially demanding. Petitioners are within the zone of interests.

*Third*, petitioners' challenge is timely. A petition for review of final EPA action under the Clean Air Act ordinarily must "be filed within sixty days from the date notice" of the action "appears in the Federal Register." 42 U.S.C. § 7607(b)(1). On April 28, 2014, EPA issued a final rule extending the test fuel regulation to light-duty cars and trucks. On June 26, 2014, fewer than 60 days after publication, petitioners timely filed this petition.

*Fourth*, petitioners' suit is ripe. The "fitness of an issue for judicial decision depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *National Association of Home Builders v. Army Corps of Engineers*, 417 F.3d 1272, 1281 (D.C. Cir. 2005) (internal quotation marks omitted). If "there are no

significant agency or judicial interests militating in favor of delay," a lack of hardship "cannot tip the balance against judicial review." *National Association of Home Builders v. Army Corps of Engineers*, 440 F.3d 459, 465 (D.C. Cir. 2006).

Petitioners argue that the test fuel regulation is arbitrary and capricious because it requires that a test fuel be "commercially available." That claim is ripe. The test fuel regulation is a final agency action, and petitioners' challenge is purely legal. "It is well-established that claims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues." *Cement Kiln Recycling Coalition v. EPA*, 493 F.3d 207, 215 (D.C. Cir. 2007) (internal quotation marks omitted). Consideration of the issue would not benefit from a more concrete setting. In a similar case, EPA argued that the suit was "not ripe for review" because it was "entirely speculative how EPA's" action would impact regulated entities. *National Environmental Development Association's Clean Air Project v. EPA*, 752 F.3d 999, 1008 (D.C. Cir. 2014). We rejected that objection, saying that "EPA's argument misses the point." *Id.* If a suit "presents a purely legal question of whether EPA's final action" violates the Clean Air Act or EPA regulations, it is "unnecessary to wait" for EPA's legal conclusion "to be applied in order to determine its legality." *Id.* So too here.

## II

On the merits, petitioners argue that a fuel should not have to be "commercially available" in order to be approved as a test fuel. They contend that EPA's regulation, which requires that a test fuel be "commercially available," is therefore arbitrary and capricious. We disagree. It is entirely commonsensical and reasonable for EPA to require vehicle

manufacturers to use the same fuels in emissions testing that vehicles will use out on the road. Moreover, the regulation is rooted in (if not compelled by) the statute, which says that EPA must ensure that "vehicles are tested under circumstances which reflect the actual current driving conditions under which motor vehicles are used, including conditions relating to fuel." 42 U.S.C. § 7525(h).

Petitioners say, however, that the test fuel regulation creates a catch-22. Consistent with the statute's directive, the regulation prohibits the use of a test fuel that is not "commercially available." 40 C.F.R. § 1065.701(c). At the same time, another statutory provision prohibits the sale of a fuel that is not "substantially similar" to an approved test fuel. 42 U.S.C. § 7545(f). Putting those two requirements together, petitioners see a catch-22: They contend that it is illegal to use a test fuel unless it is first approved for sale in the market, and that it is illegal to sell a fuel in the market unless it is first approved for use as a test fuel.

Petitioners' argument fails, however, because EPA's test fuel regulation is not the source of any catch-22. Rather, to the extent a so-called catch-22 exists – which has been neither established nor conceded – it is the result of the statutory scheme adopted by Congress.[3]

Petitioners also contend that the "commercially available" requirement is arbitrary and capricious because it conflicts with EPA's stated purpose of permitting the use of new kinds of test fuels. But as we have already explained, the

---

[3] We do not decide here whether the test fuel regulation's "commercially available" requirement is compelled by the statute or whether, consistent with the statute, EPA could relax the "commercially available" requirement. We need not reach that question and do not imply an answer one way or the other.

Clean Air Act provides that EPA's test fuel regulations must "reflect the actual current driving conditions under which motor vehicles are used, including conditions relating to fuel." *Id.* § 7525(h). It is not arbitrary and capricious for EPA to fulfill that statutory mandate by requiring that test fuels be "commercially available."

In short, the "commercially available" requirement is not arbitrary and capricious.

* * *

We have considered all of petitioners' arguments. We deny the petition for review.

*So ordered.*